Rachel R. Raymond, SBN 269832
1151 El Centro St., Ste. D.
S. Pasadena, CA 91030
rachelrraymond@gmail.com
Cell: (818)395-4750
Fax: (626)639-3140

Attorney for Plaintiffs.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
(Western Division – LOS ANGELES)

| | |
|---|---|
| LUIS ENRIQUE AGUILERA ANGELES, an individual; ROSA EMELIA CEBALLOS LOPEZ, an individual; Y.A., a minor, by and through her guardian ad litem, LUIS AGUILERA; and Q.A.., a minor, by and through her guardian ad litem, LUIS AGUILERA | **Case No.** : 2:23-cv-00875 **COMPLAINT FOR DAMAGES** Claim 1: 42 U.S.C. §1983 (Unwarranted Seizure) |
| Plaintiffs, v. | Claim 2: 42 U.S.C. §1983 (Judicial Deception, Unnecessary/ Excessive Duration of Continued Detention) |
| COUNTY OF LOS ANGELES; JEANETTE ARZATE, an individual; ANTHONY OKELOLA, an individual; E. LOPEZ, an individual; ERIKA BARRALES, an individual; NORMA DISON, an individual; LISETTE SOLIS, an individual; MARICELA OCHOA, an individual; CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT (LAPD), a public entity, LAPD OFFICER RAMIREZ, Hollenbeck Division, serial number 31010; LAPD OFFICER BRAVO, Hollenbeck Division, serial number 36154; and DOES 1-20 inclusive, | Claim 3: Monell-Related Claims -Count 1(Unwarranted Seizures) -Count 2 (Judicial Deception) (**DEMAND FOR JURY TRIAL**) |
| Defendants. | |

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

1

## INTRODUCTION

1.      The Aguilera's have always thought of themselves as a very close-nit family. Luis, Rosa and their four daughters, Itzel (24 yrs. old), Xochitl (21 yrs. old), YA (16 yrs. old) and QA (13 years old), lived happily together in their small, but happy home for the last 20 years.

2.      Luis and Rosa Aguilera met over 30 years ago.  Luis was thrilled when Rosa accepted his hand in marriage, and they were married on March 26, 1996, and have remained happily married for over 27 years.  Neither Rosa nor Luis has any criminal or domestic violence history.

3.      Luis and Rosa describe their relationship as an extremely close and supportive partnership.  Their daughters have witnessed their mother and father work through some of the most difficult situations, as a supportive, unified front.

4.       In 2002, Luis was in a major motorcycle accident.  He was told he might never be able to walk again.  Rosa's unwavering commitment to her husband and her family only became more apparent as she stepped up as the sole breadwinner during Luis's long and difficult recovery.  Not only did Rosa have to work even longer hours, but she also maintained the family household, and was able to keep a sense of normalcy even though her husband, the loving father of her 4 daughters, suddenly, could no longer walk, eat, move, go to the bathroom, etc., on his own.  Their marriage not only survived Luis's long arduous recovery, but it also grew even stronger.

5. Along with the support of his daughters and his wife, Luis was able to start anew.  In 2004 the owner of the barbershop where Luis and Rosa worked announced he

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

2

was selling his business.  However, the owner had worked with Luis and Rosa for several years decided to offer it to them because he knew they would cherish and grow the small business he had begun.

6.    Luis and Rosa opened Aguilera's Barber shop and the Aguilera family embarked upon a new chapter in their lives.   Their daughters continued to excel in school and in their daily lives and extracurricular activities. Luis and Rosa always strive to work together and continue to maintain an open-door policy with their daughters, in turn, their daughters regularly sought their advice when it came to making difficult decisions in their lives.

7. Luis is an active member of his local chamber of commerce and has owned and operated Aguilera's Barbershop, since 2004.  Luis has received several awards regarding his service to the community of El Sereno and the positive effect both he and his business has had on the community.  Specifically, Luis is recognized for his outstanding dedication and commitment to improving the community of El Sereno along with his leadership role in restructuring and operating the El Sereno Chamber of Commerce.

8.    All the Aguilera girls are well behaved, studious, smart, and caring individuals.  They would all spend a lot of time together and they always made sure to sit down together, as a family, almost every night for dinner. Little did they know that February 3rd, 2021, would be the last time they would eat dinner together, as a family.

9.    On the evening of January 26, 2021, Luis and Rosa's daughters disclosed to them, for the first time, that a neighbor had sexually molested the three oldest daughters, each of them when they were each approximately 7 years old. Luis and Rosa never could

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

3

have imagined such an obscene act perpetrated against one of their daughters. Instead,

they find out, all at once, that this neighbor had sexually assaulted three of their 4

daughters, multiple years apart, in secret, separate and apart from their sisters.

10.    Luis and Rosa were stunned and heartbroken. It was devastating news to

hear that this had happened to 3 of their daughters. (Perpetrated by a neighbor that they

had a cordial relationship with for over 20 years.)

11.    The following morning Luis and Rosa called YA's high school counselor,

Ms. Molly Vasa, to report what the neighbor had done to their daughters. Upon receiving

the message and speaking with YA, Ms. Vasa, as a mandated reporter, reported the

incident to DCFS. (DCFS referral No.: 1159-7650-1260-1074202 dated 1/27/2021) In

turn, Ms. Vasa informed the Aguilera's that they would be contacted immediately by a

DCFS worker and/or LAPD.

12.    The Aguilera family waited 4 full days, January 28, 29, 30, and 31, to hear

back from authorities, yet they heard nothing. Luis and Rosa would come to find out later

that they were never going to be contacted by any authority because the referral and the

SCAR (Suspected Child Abuse Report) generated were immediately evaluated out

because the perpetrator of abuse was not a member of the household.

13.    On February 1, 2021, Luis, and Rosa called Ms. Vasa, again, and Ms. Vasa

instructs them to make a police report. Luis calls the Hollenbeck police station at 2:13

pm. He is only able to leave a message as no one answered the phone. Luis tried calling

3 more times between 2:15 pm and 2:53 pm. Each of those calls also went unanswered.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

4

At 2:54 pm Luis calls 911, he was transferred to the non-emergency line where he waited on-hold until he was disconnected, that call was never answered either.

14.   Luis informed Ms. Vasa that he called the police station four times and even called 911 and that he was never able to speak to a live person to make the report.  Ms. Vasa told Luis she would call the police and try to get an appointment set up for the family to make their report.  Ms. Vasa was able to set up an appointment for February 3, 2021, at 3pm.

15.   On February 3rd, 2021, together, as a family, Luis, Rosa, Itzel, Xochitl, YA and QA went to the Hollenbeck police station to report what the neighbor had done to their daughters when they were each around 7 years old.  The Aguilera family finally felt a sense of hope, that they were finally going to be heard and that something was going to be done regarding the neighbor.  Little did they know this couldn't have been further from the truth.

16.   FA, MO and the 4 daughters were left waiting outside the police station.  Officer Ramirez interviewed Luis outside the station for less than 10 minutes.

17.   Luis explained to Officer Ramirez that they have been trying to report the incident to the police since Feb 1, 2021.

18.   Father informed RAMIREZ that he had NO prior knowledge of the abuse and when his daughters informed him, he took immediate action and informed the school counselor and followed up with multiple calls to LAPD.  Officer Ramirez doesn't seem to hear Luis or even care what he had to say.  It was clear that he had already made up his mind that Luis and Rosa were not protective.  of their daughters because they did not

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

5

report the neighbor back when it happened. However, *Luis and Rosa could NOT report something they did not know occurred.*

19. During the "interview", Luis was informed that his two youngest daughters were being detained and that he must wait for the DCFS social worker to arrive.

20. Officer Bravo and a female officer interviewed Rosa. Right from the start of the interview BRAVO accused Rosa of knowing of the abuse back when it was perpetrated on their daughters. The female officer chimed in, "If it were my kids, I would have done something! Why didn't you do anything?!" Once again Rosa explained that her daughters told her about the incidents the night of 1/26/21, the same time they informed Luis. Rosa informed her that she called Ms. Vasa the next morning.

21. The officers eventually allowed the family into the station but only in the lobby. The entire family spent over 12 hours at the police station, sitting and even sleeping on the floor of the lobby while each of the family members was interviewed separately by the police officers.

22. Luis went to pick up dinner for the family and despite the circumstances, the family still had a nice dinner together, albeit on the floor of the lobby at the station. While they were eating Luis noticed the officers looking at them strangely as they ate together. After they finish eating, officer Ramirez pulls Luis aside and apologizes to him and tells him that he believes he is protective and that the children were safe with him.

23. Despite Ramirez's admonition to Luis, Officer Bravo announces that they must wait for the social worker to arrive. At 9:40 pm DCFS child services worker ARZATE arrived at the police station.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

6

24.   ARZATE also interviewed each of the remaining family members separately. At approximately 3:30 am Luis was asked by ARZATE if he would take the children to the PGM's home.  Luis said he had no problem with taking them to his mother's house, but it was 3:30 am and he would take them in the morning, after they had a chance to rest and gather their things. ARZATE said it was up to Luis to decide.  In truth Luis and Rosa had no choice as to the removal of their children from their care.  The so-called choice was to either agree to take children to PGM's immediately or ARZATE will do what she needs to do to protect the children, i.e. they will be placed in foster care, either way the children were being removed from their care, custody, and control without a warrant and in the absence of exigent circumstances.

25.   Luis and Rosa drove QA and YA to PGM's home with ARZATE closely following behind them.  to the house to ensure Luis and Rosa took their children to PGM's immediately. ARZATE proceeded to interview the Paternal grandmother, paternal aunt, and paternal cousin regarding the allegations at 4:40 am.   Beginning with the warrantless removal, DCFS and its personnel ran roughshod over the rights and liberties of LUIS, ROSA, Q.A. and Y.A. in an odyssey that continued for 11 months.

## **JURISDICTION AND VENUE**

26.   This is an action for damages for violations of Plaintiffs' state and federal civil rights, under 42 U.S.C. § 1983, including violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution; and the Rehabilitation Act of 1973.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

7

27.  Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to section 1983. Jurisdiction is also conferred by 28 U.S.C. §1331.

28.  This Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367(a).

29.  Venue is proper in this Court because the acts and omissions complained of occurred in the County of Los Angeles, and it is believed that one or more Defendants currently reside, transact business, or have offices in the County of Los Angeles.

30.  This Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367(a).

31.  Venue is proper in this Court because the acts and omissions complained of occurred in the County of Los Angeles, and it is believed that one or more Defendants currently reside, transact business, or have offices in the County of Los Angeles.

## **PARTIES**

32.  Plaintiffs, Luis, and Rosa are and were at all material times mentioned herein, residents of the County of Los Angeles, State of California. Y.A. and Q.A.  are the minor children of LUIS and ROSA.

33.  Under Fed. R. Civ. P. 5.2, the minor children's names are reduced to initials in these pleadings.  To protect the minor children's privacy, it is Plaintiffs' intent to use these designations unless and until such time as the Court orders otherwise.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

8

34.  Plaintiff, LUIS, is the natural and biological father of his children Y.A. and Q.A. Plaintiff, ROSA is the natural and biological mother of her minor children, Y.A. (born April 2) and Q.A. (born July 23).

35.  At all times relevant herein, prior to the removal of Y.A and Q.A. from Plaintiffs' care by Defendants, Plaintiffs, LUIS, and ROSA raised, nurtured, provided guidance, and cared for their children.

36.  At all times prior to the wrongful removal and continued detention of the children by Defendants, Plaintiffs enjoyed the company, companionship, and society of each other, and all other benefits of their rights of familial association.

37. Defendant COUNTY OF LOS ANGELES ("COLA") is a public entity organized under the laws of the State of California.

38.  At all times applicable herein, COLA's Department of Children and Family Services ("DCFS") was and is an agency of COLA designated by COLA to administer laws and programs relating to the protective services for children, foster care, and adoptions.

39.  DCFS operates under the policy and direction of the Los Angeles County Board of Supervisors and the California Department of Social Services and Health Services.

40.  Plaintiffs contend that the policies, practices, and procedures of DCFS alleged, inclusive of the warrantless removal of minor children in cases where the children are not in imminent risk of serious bodily injury, and, inclusive of the material misrepresentation of facts along with the failure to include mitigating and/or exculpatory evidence in reports

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

9

presented to the court and throughout the protective custody warrant, constitute a basis for governmental liability in this case under the *Monell* theory of liability.

41.  Such *Monell* liability also exists based on COLA's failure to train at all and/or failure to train employees adequately on state and federal laws, statutes, and/or regulations implicated in the context of a child abuse/neglect investigation.  For these policies, procedures, practices/customs, and inadequate or non-existent training, Plaintiffs do hereby seek to hold COLA responsible in whole or in part for the conduct of the individual Defendants herein named.

42.  Plaintiffs hereby sue all agencies and departmental units of COLA specified hereinabove under the designation of COLA herein, and/or interchangeably.

43.  At all times applicable herein, defendant CSW JEANNETTE AZARTE ("AZARTE ") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

44.  At all times applicable herein, defendant supervising ERCP social worker ANTHONY OKELOLA ("OKELOLA") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of his employment, and individually, driven by COLA's official policies and practices.

45.  At all times relevant herein, defendant social worker E. LOPEZ ("LOPEZ") was an individual residing, on information and belief, in the County of Los Angeles, and

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

10

an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

46.  At all times relevant herein, defendant social worker CSW ERIKA BARRALES ("BARRALES") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

47.  At all times relevant herein, DEFENDANT supervising social worker NORMA DISON ("DISON") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

48.  At all times relevant herein, defendant social worker CSW LISETTE SOLIS ("SOLIS") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS, acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

49.  At all times applicable herein, defendant supervising social worker MARICELA OCHOA ("OCHOA") was an individual residing, on information and belief, in the County of Los Angeles, and an officer, agent, and employee of COLA and DCFS,

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

11

acting under color of law and within the course and scope of her employment, and individually, driven by COLA's official policies and practices.

50.  As the employer of social workers, emergency response workers, dependency intake workers, placement workers, investigators, and their supervisors, COLA/DCFS has primary responsibility for the training, discipline, and supervision of such employees, including supervisors of such employees.  Plaintiffs are informed and believe and thereon allege that COLA/DCFS promulgated, encouraged, and/or permitted, the policies, practices, customs and procedures under which the individual Defendant employees of COLA/DCFS committed the acts or omissions complained of herein, and of which policies, practices, customs and/or procedures, and or/failure to train, whether or not promulgated in written form, COLA/DCFS encouraged, or allowed to persist.

51.  COLA condoned, ratified, and ignored without remediation the conduct of the employee Defendants complained of herein, under said policies, practices, customs, and procedures.

52.  Plaintiffs are informed and believe, and on such information and belief allege, that except as otherwise alleged herein, each of the Defendants employed by COLA/DCFS are, and at all relevant times were, the agents, employers, alter-egos and/or co-conspirators of each of the other COLA/DCFS employee defendants named herein; and, in doing the things alleged here in, each was acting within the course and scope of such positions, at the direction  of and/or with the permission, knowledge, consent and/or ratification of each of the other Defendants.  Plaintiffs are informed and believe and allege

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

12

thereon that Defendants conspired with and aided and abetted each other in the events herein described.

53.  Plaintiffs are ignorant of the true names and identities of those Defendants sued fictitiously herein as DOES 1–20, inclusive.  When ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiffs' damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. On information and belief, Plaintiffs make all allegations contained in this Complaint against all Defendants, including DOES 1–20.

54.  Defendants, individually and collectively, did knowingly and willingly, conspire with each other to deprive Plaintiffs of their State and Federal Rights, Liberties, and Interests.

55.  Plaintiffs are informed and believe and, on such basis, allege that each of the Defendants were acting under color of law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

56.   At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs are informed and believe that each Defendant (including DOES 1–20), was a parent, subsidiary, affiliate, alter ego, partner, agent,

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

13

franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each Defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of the acts.

57.    Defendant CITY OF LOS ANGELES (herein "CITY is a municipality organized and operating under the laws of California.

58.    The LOS ANGELES POLICE DEPARTMENT ("LAPD") is a governmental agency organized and existing pursuant to the law and policies of Defendant CITY, which together with LAPD, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, and Does 1 – 20, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, and/or failure to train, whether promulgated in written form, encouraged, or allowed to persist by Defendant CITY condoned, ratified, and ignored without remediation the conduct of the police officer Defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

59.    As the employer of police officers and their supervisors, CITY and/or LAPD had primary responsibility for the training, education, and supervision of police officers, and all other LAPD personnel, and LAPD supervisors. Plaintiff contends that the policies, practices, and procedures of LAPD aforesaid and hereinbelow, inclusive of the warrantless removal of minor children in cases where the children are not in imminent risk

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

14

of serious bodily injury, constitute a basis for governmental liability in this case pursuant to the *Monell* theory of Liability. Plaintiff has not and does not plead as a separate "Claim for Relief," The *Monell* liability of the CITY, because a "*Monell* claim," is a legal theory of vicarious liability for the action or inaction of another, not a stand-alone "Claim for Relief." However, in the event the Court may desire a separate Claim for Relief for such liability, Plaintiff reserves the right to seek leave to separately set forth a Claim for Relief for *Monell* liability.

60.    Such *Monell* liability also exists based on the fact CITY and/or LAPD has failed to train at all and/or failed to train employees adequately on state and federal laws, statutes, and/or regulations implicated in the context of a child abuse/neglect investigation. This failure to train leads to and is the driving force behind the illegal warrantless removals of children in the County of Los Angeles, such as occurred in this matter. For these policies, procedures, practices/customs, and inadequate or non-existent training, Plaintiff do hereby seek to hold CITY responsible in whole or in part for the conduct of the individual Defendants herein named.

61.    Additionally, CITY and/or LAPD has developed a long-standing practice of removing children without a warrant in circumstances that do not constitute an imminent risk of serious bodily injury, and/or without reasonable investigation, and/or when the risk of harm to a child is not so imminent as to have insufficient time within which to obtain a warrant, a process presumably involving the

62. consideration of neutral and detached judicial officer.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

15

63.    Defendant LAPD OFFICER RAMIREZ, (herein "RAMIREZ") was an employee of the CITY and/or LAPD as a police officer at the time of the events and circumstances complained of herein. Plaintiff is informed and believes that 64.RAMIREZ was in the Hollenbeck Division, had the following identifying serial number 31010 and was a resident of COLA.

65.  Defendant LAPD OFFICER BRAVO (herein "BRAVO") was an employee of the CITY and/or LAPD as a police officer at the time of the events and circumstances complained of herein. Plaintiff is informed and believes that BRAVO was in the Hollenbeck Division, had the following identifying serial number 36154 and was a resident of COLA and was a resident of COLA.

66.  Plaintiffs are informed and believe and, on such basis, allege that each of the above-named parties were and are the agent, employee, principal, employer and/or co-conspirator of each of the remaining defendants and/or vice versa. In addition, Plaintiffs are informed and believe and, on such basis, allege that the defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named defendants conspired with, and/or aided and/or abetted and/or jointly collaborated with each of the remaining defendants and identified persons in committing the acts herein alleged.

67.  Plaintiffs are informed and believe, and thereon alleges, that the individually named Defendant officers were decision makers in the making and/or

implementation of CITY policy regarding the removal and continued detention of Y.A. and Q.A.  During an investigation into allegations of child abuse

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

16

generally, and in the case involving Luis, Rosa, Y.A. and Q.A., specifically, and the de

facto decision makers on the decision to remove children such as Y.A. and Q.A. from

their parents without a warrant, without exigent circumstances, and without consent.

68.  Plaintiff is informed and believes and, based upon such information and

belief, allege that at all times herein mentioned, RAMIREZ AND BRAVO, and Does 1-

20, were each the agent of each other, and/or employees of their codefendant CITY

and/or LAPD, and each of Defendants were acting within the scope, purpose, and

authority of their employer, CITY and/or LAPD, and with the knowledge, permission and

consent of said co-defendants, and each of them, and/or within the scope and purpose of a

conspiracy to violate Plaintiff's rights.

69.  Plaintiffs are informed and believe and, on such basis, allege that each of the

above-named defendants and settling co-conspirators were acting under color of law in

committing the acts herein alleged, and that in doing the things herein alleged defendants,

and each of them, were acting within the course and scope of their duties as employees or

agents of each other.

70.  At or near the time of filling this complaint, LUIS AGUILERA has or will

apply to the court to act as the Guardian Ad Litem on behalf of his minor children.

71.  Plaintiffs are ignorant of the true names and identities of those Defendants

sued fictitiously herein as Does 1-20, inclusive.

72.  Plaintiffs are informed and believe that the individual Defendants named

herein, including the Doe Defendants participated in some manner in the events set forth

in this Complaint, or failed to participate in some manner, which acts or failures to act

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

17

were in some manner a proximate cause of the injuries complained of by Plaintiffs herein, and for which, whether by conspiracy to violate the Plaintiffs' rights, agreement, inadequate supervision, inadequate training, consent, ratification, or active participation, such Doe Defendants are responsible and/or liable for the Plaintiffs' injuries and damages.

73.  Defendant DOES 1-20 are identified and sued herein by such fictitious names, their true names and capacities being unknown to Plaintiffs. When ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiffs' damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. On information and belief, Plaintiffs make all allegations contained in this Complaint against all Defendants, including DOES 1-20. At all times mentioned herein, DOES 1-20 were acting under color of law and within the course and scope of their respective duties as DCFS agents and/or employees.

74.  Hereinafter, when referred to collectively, the Defendants in paragraphs 16 through 22, inclusive, may occasionally be referred to as Social Worker Defendants.

75.  Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1-20, or their officers, agents, managers, representatives, employees, heirs, assignees, customers,

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

18

tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants (or any of them) and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

76. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs are informed and believe that each Defendant (including DOES 1-20), was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, and/or joint ventures of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each Defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

## COMMON ALLEGATIONS

77. At all relevant times, Luis, Rosa and their four daughters, Itzel (24 yrs. old), Xochitl (21 yrs. old), YA (16 yrs. old) and QA (13 years old) constituted a family unit, entitled to Constitutional protections arising under the First, Fourth, and Fourteenth Amendments. This includes, but is not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, right to be free from government deception in the presentation of evidence to the courts, and the right of parents to reasonably direct the upbringing, care, and control of their children without

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

19

unwarranted governmental interference. These rights also included medical care and the making of important medical decisions for their children.

78.  In addition, Luis, Rosa, and all their children enjoyed a separate and distinct right to live together without undue governmental interference.

79.  After the disclosure Luis and Rosa called YA's high school counselor, Ms. Molly Vasa, to report what the neighbor had done to their daughters.  Upon receiving the message and speaking with YA, Ms. Vasa, as a mandated reporter, reported the incident to DCFS.  (DCFS referral No.: 1159-7650-1260-1074202 dated 1/27/2021). Ms. Vasa informed the Aguilera's that they would be contacted immediately by a DCFS worker and/or LAPD.

### *January 27, 2021, referral #1159-7650-1260-1074202 Evaluated out*

80.  Ms. Vasa reported the incident to DCFS via the Child Protection Hotline the following day, January 27, 2021. Ms. Vasa informed the hotline CSW of the abuse and the fact that she found the parents to be not only protective and supportive, but also proactive in trying to address the situation.  She also informed the CPH worker that the parents are aware that she will be making a child abuse report and that they were relieved to hear that as they thought they would now get the help they need to address the situation.  Ms. Vasa also informed the CPH worker that Luis and Rosa are going to contact law enforcement. The hotline worker generated referral #1159-7650-1260-1074202 alleging sexual abuse of child Y.A. by a neighbor, Javier Hernandez, and Q.A. was considered a sibling at risk and then immediately evaluated the referral out

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

20

that same day. ("Reports alleging specific acts or indicators of suspected child abuse, neglect and/or exploitation shall be entered as a referral in the Child Welfare Services /Case Management System (CWS/CMS) regardless of whether they are ultimately evaluated out.")  The referral was immediately evaluated out as it was determined by the CPH worker that Luis and Rosa had no prior knowledge of the abuse and once they were informed, they took immediate steps to protect their children.

81.  What neither the parents nor Ms. Vasa knew was that the referral was evaluated out because the alleged perpetrator was NOT, nor was he ever, a member of their household. Once the referral was evaluated out, no further follow-up occurs.

82.  The Aguilera family waited 4 full days, January 28, 29, 30, and 31, to hear back from authorities, yet they heard nothing. Luis and Rosa would come to find out later that they were never going to be contacted by any authority because the referral was immediately evaluated out as the perpetrator of abuse was not a member of the household.  and the SCAR (Suspected Child Abuse Report) generated was

83.  By February 1, 2021, Luis calls Ms. Vasa again because he had not been contacted regarding the referral made on Jan. 27, 2021.  Ms. Vasa tells Luis to go to the police station and make a report.  Luis arrived at the Hollenbeck station only to find that it is not open because of the COVID lockdown.  Luis then picks up the phone outside the door of the station to hopefully speak with an officer, but the phone just rang and rang. Luis called the Hollenbeck station a total of 4 times between 2:13 pm and 2:54 pm.  Luis called 911 at 2:55 pm and was transferred to a non-emergency line.  No one answered that call either. At 3:55 Luis calls Ms. Vasa again to let her know that he cannot get

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

21

through to the police.  Ms. Vasa told Luis she would call the police directly.  She was able to set up an appointment for Luis, Rosa, and their daughters for Feb. 3, 2021, at 3:00 pm.

84.    On February 3rd, 2021, together, as a family, Luis, Rosa, Itzel, Xochitl, YA and QA went to the Hollenbeck police station to report what the neighbor had done to their daughters when they were each around 7 years old.  The Aguilera family finally felt a sense of hope, that they were finally going to be heard and that something was going to be done regarding the neighbor.  Little did they know this couldn't have been further from the truth.

85.    Luis, Rosa, and their 4 daughters were left waiting outside the police station. Officer Ramirez interviewed Luis outside the station for less than 10 minutes.

FA explained to Officer Ramirez that they have been trying to report the incident to the police since Feb 1, 2021.

86.  Father further informed RAMIREZ that he had NO prior knowledge of the abuse and once informed and after working through the initial shock, Luis and Rosa took immediate action and informed the school counselor and followed up with multiple calls to LAPD.  It seemed clear that Ramirez had already made up his mind that Luis and Rosa were not protective of their daughters.

87. The officers eventually allowed the family into the station but only in the lobby. The entire family spent over 12 hours at the police station, sitting, laying and even sleeping on the floor of the lobby. Each daughter was interviewed separately as was Rosa and Luis.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

22

88.   During the "interview", Luis was informed that his two youngest daughters they all must wait for the DCFS social worker to arrive.

89. Officer Bravo and a female officer interviewed Rosa.  Right from the start of the interview BRAVO accused Rosa of knowing of the abuse back when it was perpetrated on their daughters.  The female officer chimed in, "If it were my kids, I would have done something!  Why didn't you do anything?!"  Once again Rosa explained that her daughters told her about the incidents the night of 1/26/21, the same time they informed Luis.  Rosa informed her that she called Ms. Vasa the next morning. Ms. Vasa received the call.

90.     During their 12 ½ -hour ordeal Luis went to pick up dinner for the family, and despite the circumstances, the family had a nice dinner together, albeit on the floor of the lobby at the station.   While they were eating Luis noticed the officers looking at them strangely as they ate together.  After they finished eating, Officer Ramirez pulls Luis aside and apologizes to him and tells him that he believes he is protective and that the children were safe with him.

91.  Luis asks if he can take his daughters to the car so they can at least lay on the seats as opposed to the floor of the police station lobby.  Despite Ramirez's admonition to Luis, he is told no, and that they must wait for the social worker to arrive.

92.  At 8:21pm Arzate calls Officer Ramirez with the Los Angeles Police Department Hollenbeck Division. Arzate inquired whether he feels comfortable releasing the children to the parents, and this officer stated: 'It will be only because they are [now] on notice, and I think the dad is being protective of the kids now that he knows. I think

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

23

the mom will be able to protect because we are involved, but I think the dad is more protective.'

93.  At 9:40 pm ARZATE arrives at the police station to interview each of the family members separately.

94.  At 9:55 pm, after YA had already been interviewed by Officer earlier, and had been at the station since 3pm, had to endure an almost 2-hour interview with ARZATE. During that interview YA stated that, "Child reported that she feels safe at home, is eating every time she is hungry, always has clean clothes, and attends the doctor when she is ill." YA also reported that," Father called her after the initial shock o9f the disclosure dissipated and said: 'I shouldn't have acted the way I acted. I was just in shock, *He said that he will do whatever I wanted to do to make me feel safe. He said if I need more time separated, I can take as much time as I want, he will be there; whatever next step I can take, he will take it with me*. ARZATE asked YA again if she felt her parents were being protective and supportive and she stated that, "the family made a plan with the school psychologist to call the police. Child stated: 'I think my dad did call the police to make an appointment to speak to the police. He told me he made the appointment that's why we are here today.'"  When ARZATE asked YA, for the third time, "if father is supportive of child right now and child agreed."  YA also stated during the interview that she feels safe with mother and father.

95. At approximately 11:56 pm, ARZATE interviewed QA for over an hour.  QA expressed her frustration with the situation and that she was angry and upset, however she *never* stated that she did not feel safe at home.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

24

96.  Father's interview began at 1:10 am and went on for over an hour. ARZATE asked Father how he responded to hearing this news from his daughters, Father was very forthcoming with ARZATE.  Arzate reported that Father said the following, "I didn't know how to respond at first. It was very heavy for me. [Initially] I made comments that I shouldn't have made. They feel like I was bothered by them because of it, but I wasn't. I wasn't bothered with them. I took time to myself and then I spoke to them and clarified this with them. I didn't know what to do—either to push them to make a report or confront this person, or what they wanted to do. I asked them to please tell me how they wanted to address this, and that I would support them. They made the decision to file a report and that is why I am here."  He also stated that," YA made the police report. She also told the school therapist. The therapist said to make a police report. We came about 2- 3 days ago and the police told me to call from outside. I called using the phone outside, but no one answered so I left a message. I called 911 for more information, and no one helped us. We called the therapist and YA informed her that we were trying to call the police and that no one was taking them seriously".

97.  ARZATE asked Father if he would like "support on how to address this situation" and Father stated that he would like the support and believes family therapy would be very helpful. Father explained to ARZATE that he was quiet at first because he was shocked and he also didn't want to say the wrong thing, and at the same time he didn't want to stay silent because that will make the children believe that he doesn't care. Father then asked for further support on how to

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

25

respond to the children and be a healthy form of support. Father stated that he is

willing to do whatever is recommended by DCFS to help address referral concerns.

CSW asked if the father and family are willing to receive Voluntary Family

Maintenance Services, and the family agreed.

98.  ARZATE submitted an on-demand drug test for both Luis and Rosa that

same day.  Both tests came back clean, yet the results of the drug tests were not

attached to the removal order.

99.  Mother's interview began at 2:33 am, immediately after Father 's.

ARZATE inquired whether the family had made a safety plan and Mother is

quoted stating the following, "We already made a plan that they were not going to

stay at home alone, they cannot go to their (Javier and his wife's) house at all, and I

will be with them at all times all day."

100.  At approximately 3:30 am Luis was asked by ARZATE if he would

take the children to the PGM's home immediately upon leaving the station.  Luis

said he had no problem with taking them to his mother's house, but it was 3:30 am

and he would take them in the morning, after they had a chance to rest and gather

their things. ARZATE said it was up to Luis to decide, to take his 2 youngest to the

PGMs immediately upon leaving the station or they will be placed in foster care.

Clearly Luis and Rosa had no choice as to the removal of their children from their

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

26

care because either way the children were being removed from their care, custody, and control, without a warrant and in the absence of exigent circumstances.

*~ February 4, 2021 at 3:30 am Arzate's removes the minors without a warrant and presents false information that Luis and Rosa consented to their daughters removal in both the statement of cause and the detention report. ARZATE drafts the Detention Report and the warrant application, Turns it over to her supervisor, OKELALA, for approval and then submits it to LOPEZ at the Intake and Detention Center (IDC) Full of False, Incomplete, and Misleading Information*

101.  ARZATE falsely stated to the court that the parents "mutually agreed for DCFS to release the children to the parents under a Safety Plan where the children will stay with paternal grandmother." This is false. ARZATE detained the children through threats and coercion. Specifically, she manipulated LUIS by making it seem like he had a choice in taking his daughters to his mothers. However, when LUIS suggested that he would take the children to his mother's house after he first took them home to sleep (it was 3:30 am) and then gather their things, it was clear that ARZATE had one directive, to remove these children and open a case in dependency court. This is further supported by the fact that Father's adult daughter, Itzel, who was present at the station, overheard ARZATE speaking with her supervisor stating that if Father didn't agree to take the girls immediately, they would be placed in foster care.

102.  ARZATE then characterized Father as being ambivalent regarding the placement, which was false. She later used this so-called ambivalence as a basis

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

27

for why YA and QA remained at risk of further abuse if she did not file an expedited removal order. There was absolutely no ambivalence whatsoever. Remember, ARZATE had full knowledge that the last incident of abuse by the neighbor was 8 years ago, Father and Mother had NO prior knowledge and the abuse never occurred in the home or while the children were under the parents' supervision.

103.  To be clear, the events of February 3, 2021 and those leading up to it, including the original referral, are based on exactly the same facts, absolutely nothing new had occurred to warrant the extreme measures COLA, ARZATE, and OKELALA took in first removing them without a warrant and then filing an expedited removal order with the court.  Remember, the original referral was *Evaluated Out* the same day it was reported.  DCFS policy states that, "[T]he referral *must* be evaluated out when the child's parent /primary caregiver is not suspected to have caused or allowed the abuse, neglect or exploitation of their children, and it is determined that they have taken appropriate steps to protect their child(ren)."  In other words, referrals that do not meet the above criteria, "do not constitute appropriate child abuse referrals".  (*DCFS Child Welfare Policy Manual*, section entitled *Child Protection Hotline: 0050-502.10*) and the section entitled *Child Protection Hotline (CPH): Alleged Perpetrator Is Not the Child's Legal Parent or Guardian:0050-503.70)."*

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

28

104.  At 4:00 am on February 4, 2021, Luis drove his children directly from the Hollenbeck Police station to his mother's home in Reseda. ARZATE followed Luis the entire trip to his mother's home

105.  At approximately 4:40am, on 02/04/2021, ARZATE arrived at paternal grandmother's home, Yolanda Angeles, and proceeded to interview her for approximately 30 minutes. PGM stated that the parents have been very protective of the children, overall.  At 5:07 am, on the morning of 2/4/21 Arzate interviewed paternal aunt (PA) Abigail Aguilera and paternal cousin (PC) Celeste Ivankich, respectively.  PGM and PA signed the safety plan at 5:30 am.

106.  Based on the actions and statements of ARZATE it was clear she had one directive, to remove these children and open a case in dependency court

107.  On February 5, 2021 Arzates submits her expedited request for removal of the girls from Luis and Rosa.  Arzate then used father's so-called ambivalence as a basis for an expedited removal order. It was granted that same day and Luis received a copy of the removal order via email, keeping him from his beloved daughters and only allowing for 1 hour of monitored visitation/week.  Luis and Rosa were devastated.

108.  The Juvenile Court presumes the truth of the matters set forth warrant/RO and in the Detention Report for purposes of determining whether or not a prima facia showing has been made. Thus, it is critically important that

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

29

DCFS social workers in ARZATE's And LOPEZ's position be truthful, honest, accurate, and complete in their reporting to the juvenile court, especially in the context of the Request for removal orders/warrant application and the Detention Reports.

***~ Arzate's Failure to exercise reasonable efforts to prevent or eliminate the need for removal is not a unique failure to this specific worker, it is a pattern and practice of DCFS to ignore this prerequisite to removal.***

109.  ARZATE failed to exercise reasonable efforts to prevent or eliminate the need for continued detention of the minors. According to welfare and institutions code § 306, ER CSWs must explore the least intrusive safety interventions first (such as in-home services combined with out-of-home services) if they can provide adequate protection for the child in a manner that is minimally disruptive to the family members. The most intrusive safety interventions (such as removal of the child, placement of the child outside the home with a relative, or a parent/legal guardian gives up their unsupervised visitation and contact with the child) are to be used only when the least intrusive safety interventions cannot ensure the child's safety.

110.  Before taking a child into custody, a social worker must consider whether the child may remain safely in his or her residence, taking into consideration, at a minimum, whether there are reasonable services available that would eliminate the need for removal and whether a referral to public assistance

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

30

would eliminate the need for temporary custody.  However, ARZATE did nothing

of the sort. Based on the actions and statements of ARZATE it was clear she had

one directive, to remove these children and open a case in dependency court.

DCFS utterly failed this family by implementing the most intrusive safety

measures without exercising the requisite reasonable efforts to avoid ripping this

family apart.

*LOPEZ, writes, signs and Files the Juvenile Dependency Petition – Under Penalty of Perjury; Lopez Makes False Statements and Suppresses Known Exculpatory Evidence on February 9, 2021*

111.  LOPEZ without interviewing a single witness or conducting any

further "investigation" at all drafted and filed her "Juvenile Dependency Petition",

as is the pattern and practice of the social workers assigned to the Intake and

Detention Center (IDC). There is no mistake that the IDC is a separate and distinct

office, that crafts every petition for every single case that is filed in the entire LA

county.    The crafters of the petition never speak with parent or verify any of the

statements in the allegations.  They are provided the ER workers detention report

and that is the sole basis for creating the petition.  Of course, a county counsel is

assigned to the IDC as to ensure that the crafted petitions are legally sound in order

to help ensure that something in the petition will be sustained.  Thus, they assist the

workers in creating these exaggerated, false allegations that make the parent's

action or inactions appear as egregious as possible.  The IDC worker never has to

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

31

verify one word of the allegations with the parent.  This basically ensures that something in the petition will be found to be true in the end, thereby ensuring the court's jurisdiction, regardless of the truth. Of course, this only serves DCFS's endgame, to make sure they continue to get the funding they need to survive as DCFS does not get that funding without the triggering event of removing other people's children.  Thus, it literally pays to lie, exaggerate, and misrepresent the truth, if any, regarding the petition.

112.  LOPEZ created a false narrative replete with fabricated and/or exaggerated facts, missing of exculpatory evidence and incomplete and/or misleading information. For example, Lopez falsely stated in the body of the emotional abuse allegation that, "The father blames the child Yaretzi for the family problems and told the child."  Lopez also misrepresented that Luis/Father attempted to stop YA from reporting abuse to Law Enforcement by explaining to the child the reasons why the child shouldn't report this to the police."   In truth Father had gone to the police four times and even resorted to calling 911 when he could not get a response on the non-emergency line.  And even after those attempts Father continued to try and find a way for his daughters to be heard.  Father was very open and honest with the ER CS, ARZATE,  and was more than willing to attend therapeutic family sessions so they can work through this trauma together.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

32

Unfortunately, DCFS inserted themselves into this family's life and changed its dynamic forever.

113.  The petition also alleges that Father has an unresolved substance abuse history.  This is false.  Father informed Arzate that he attended detox 8 years ago to medically detox from the pain medication prescribed for his injuries after suffering a severe motorcycle accident, which included a broken pelvis. That was the only time he had an issue with substances, albeit legitimately prescribed. The dependence on the pain medication was unique to that situation and in all other areas of his life he did not struggle with substances.

114.  LOPEZ further promulgated the false narrative by stating that YA disclosed the sexual abuse that had occurred when she was approximately 7-8 years old (she is 18 today and was 16 at the time of the filing)  to her Mother and that her Mother failed to do anything to protect her from the neighbor and that Mother continued to allow the unrelated adult male neighbor to frequent the children's home and to have unlimited access to the children. This is false and LOPEZ knew it was false as she drafted the petition from the detention report that was created prior to the petition.   LOPEZ knew that YA had stated that several years ago she told her mom that she had a bad dream about the neighbor and she did not disclose anything further until January 26, 2021.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

33

115.  Nonetheless, on February 9, 2021, Defendant LOPEZ signed the Petition after the written phrase, "I declare under penalty of perjury under the laws of the State of California that the foregoing and all attachments are true and correct." When she signed the Petition under penalty of perjury, without qualification, she had no evidence to suggest that the substance of her allegations was true.

116.  The Juvenile Court presumes the truth of the matters set forth warrant/RO and in the Detention Report for purposes of determining whether a prima facia showing has been made. Thus, it is critically important that workers in ARZATE's And LOPEZ's position be truthful, honest, accurate, and complete in their reporting to the juvenile court, especially in the context of the Request for removal orders/warrant application and the Detention Reports.

117.  The Petition was filed, and a detention hearing was held on February 10, 2021, in which the court ordered the minors to remain out of their parents care.

## **DAMAGES**

118.  As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety, and general damage to their psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, fatigue, malaise,

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

34

irritability, inability to focus, a generalized fear of authority figures, and social workers, loss of appetite, and loss of weight.

119.  The incident of the removal also caused humiliation and embarrassment and loss of reputation in the community to Plaintiffs, caused the incursion of medical fees, therapy fees, and expenses related thereto, and is likely to cause the incursion of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto.  Plaintiff also suffered a loss of wages due to Defendants' actions.

120.  Plaintiffs contend that the actions of the Defendants set forth hereinabove were malicious and oppressive, undertaken recklessly and with deliberate indifference to their rights and relationships with their minor children, and as such, were actions deserving of an award of punitive damages against the individually named Defendants.

### FIRST CLAIM FOR RELIEF
**VIOLATION OF CIVIL RIGHTS -WARRANTLESS SEIZURE**
(Plaintiffs against COLA, ARZATE, OKELOLA, LOPEZ; CITY, LAPD, BRAVO AND RAMIREZ; and DOES 1 through 20)

121.  Plaintiffs incorporates by reference all the preceding paragraphs as if the same were fully set forth herein.

122.  The right to familial association guaranteed under, without limitation, the Fourth and Fourteenth Amendments is "clearly established" such that a

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

35

reasonable law enforcement agent in Defendants' situation would know it is
unlawful to remove a child from the care, custody, and control of its parents or to
question, threaten, examine, or search a child in the absence of exigent
circumstances without first obtaining a warrant to do so.

123.   Moreover, the right to familial association guaranteed under the First
and Fourteenth Amendments to the United States Constitution was so clearly
established that any reasonable law enforcement agent, including each of the
Defendants, would know that it is unlawful to continue to detain a child from the
custody of her parent when that agent knows, or has reason to know, that there is no
legal or factual basis for the continued detention.

124.   Defendants, and each of them, had, at all times relevant herein, an
affirmative duty and obligation to recognize and conduct themselves in a manner
that confirms, provides for, and does not violate the protections guaranteed
Plaintiffs under the United States Constitution, including those under the Fourteenth
Amendment, to include without limitation, the protection parental rights, the right
to privacy, family integrity and the right to familial relations.

125.   On February 4, 2021, Defendants, and each of them, were acting under
color of state law when they acted to violate Plaintiffs' civil rights by, but not
limited to, seizing, removing, and detaining Q.A. and Y.A. from the care, custody

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

36

and control of their mother, Rosa, and father, Luis, without judicial authorization, parental consent, and in the absence of exigent circumstances.

126. Said Defendants committed these unconstitutional acts without proper justification or authority, without probable cause, and without any specific evidence to suggest that Q.A. and Y.A. were in imminent danger of serious bodily injury or death in the care of their parents.

127. At the time of said detention, Defendants, and each of them, knew that Luis and Rosa were the parents of Q.A. and Y.A. and therefore entitled to companionship, care, custody, and management of their children free of unwarranted government interference. Each of the Defendants also knew that, and each of them, failed to conduct a reasonable investigation into the facts prior to detaining QA and YA.

128. Defendants thereby violated Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution.

129. Each of said Defendants collaborated, acted, and conspired to violate Plaintiffs' civil rights as alleged herein.

130. Defendants purposefully failed to seek and/or obtain a warrant, knowing that insufficient grounds or evidence existed to support such application and/or, as detailed in Plaintiffs' Third Claim for Relief, below, because of an

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

37

unconstitutional policy, custom, or practice of failing to obtain warrants prior to

seizing children.

131.  As a direct and proximate result of these Defendants' misconduct,

Plaintiffs have suffered, and will continue to suffer, general and special damages

according to proof at trial, including but not limited to, physical and/or mental

anxiety and anguish, among other things. Plaintiffs have also incurred, and will

continue to incur, attorneys' fees, costs, and expenses, including those authorized

by 42 U.S.C. section 1988, to an extent and in an amount subject to proof at trial.

132.  Plaintiffs request damages as described in paragraphs 204 through 208,

for the conduct of Defendants complained of in this Claim for Relief.

133.  Defendants acted with malice and with the intent to cause injury to

Plaintiffs or acted with a willful and conscious disregard of the rights of Plaintiffs

in a despicable, vile, and contemptible manner. Plaintiffs seek to recover punitive

damages, as alleged in paragraph, from ARZATE, OKELOLA, LOPEZ, BRAVO

and RAMIREZ.

## <u>SECOND CLAIM FOR RELIEF – §1983</u>
(Deception in The Presentation of Evidence to the Juvenile Court)
(By Plaintiffs Against Defendants ARZATE, OKELOLA, LOPEZ, BARRALES,
DISON, SOLIS, OCHOA and DOES 1 through 20, inclusive.)

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

38

Count 1:
(Fourth and Fourteenth Amendment Violations)

134. Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 137.

135.  At all times relevant herein, there existed a clearly established due process right of individuals, including Caroline, to not to be subjected to false accusations by government officials, including the deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information in court proceedings or in documents submitted with recommendations or requests made to the court. Any reasonable social services agent and/or government agent in ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and DOES 1 through 20's, would know that it is a fundamental due process violation to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory evidence in court reports and other documents filed with the Juvenile Court.

136.  In fact, Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and DOES 1 through 20, inclusive and each of them, had the affirmative and self-evident duty and obligation to be truthful, honest, accurate, and complete in petitions, reports, and documents submitted and/or presented to the Juvenile Court which had the power to adjudicate substantial rights, including parental rights. Defendants also had an affirmative obligation and duty to refrain from using improper, unlawful, and deceptive means to obtain judicial orders

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

39

sustaining and/or adopting social worker recommendations or otherwise seeking to

denigrate Plaintiffs' well-established liberty interests in familial integrity and

continued familial association.

137.  At all relevant times, Defendants ARZATE, OKELOLA, LOPEZ,

BARRALES, DISON, SOLIS, OCHOA and DOES 1 through 20, and each of them,

were acting under color of law, and within the course and scope of their official

duties when they drafted, created, approved, and/or filed documents with the

juvenile court.

138.  Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON,

SOLIS, OCHOA and DOES 1 through 20, and each of them, either singularly or

jointly acted and/or agreed to deliberately and/or recklessly present false

statements and information, and/or omitted known exculpatory material

information when creating their various documents for presentation to the Juvenile

Court, as alleged herein above. This conduct, i.e., Defendants' knowingly deceptive

presentation of "evidence" to the Juvenile Court, caused QA and YA's detention

and/or prolonged detention from Caroline's care, custody, and/or control.

139.  Had it not been for Defendants ARZATE, OKELOLA, LOPEZ,

BARRALES, DISON, SOLIS, OCHOA and DOES 1 through 20's reckless and/or

deliberate false statements and/or omissions of exculpatory material in the

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

40

Removal Warrant Application, the Juvenile Court, the Juvenile Court would not
have issued a Removal Warrant for Q.A. and Y.A.

140.  Had it not been for Defendants ARZATE, OKELOLA, LOPEZ,
BARRALES, DISON, SOLIS, OCHOA and DOES 1 through 20's reckless and/or
deliberate false statements and/or omissions of exculpatory material in the Juvenile
Dependency Petitions, Detention Report, Jurisdiction/Disposition Report, and/or
other reports filed in the Juvenile Court, the Juvenile Court would not have
adopted Defendants' recommended findings, and Q.A. AND Y.A.'s continued
and/or prolonged detention would not have occurred.

141.  As a direct and proximate result of these Defendants ARZATE,
OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and DOES 1 through
20's reckless misconduct, QA and YA have suffered, and will continue to suffer,
general and special damages according to proof at trial, including but not limited
to, physical manifestations of emotional distress, and/or mental anxiety and
anguish, among other things.

142.  Due to the malicious, wrongful, and despicable nature of the
Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA
and DOES 1 through 20's misconduct, as herein alleged and described above,
Manuel and Andres are entitled to recover punitive damages against the individual
Defendants, and each of them, in accordance with law and subject to proof at trial.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

41

Count 2:
(First Amendment Violations).

143.  Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 147.

144.  At all times relevant herein, there existed a clearly established first amendment right protecting cohabiting siblings from unwarranted government interference in their relationship. Any reasonable social services agent and/or government agent in Defendants' situation would know that Y.A. and Q.A. enjoy this constitutional right.

145.  At all relevant times, Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and/or DOES 1 through 20, and each of them, were acting under color of law, and within the course and scope of their official duties when they drafted, created, approved, and/or filed documents with the juvenile court.

146.  Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and/or DOES 1 through 20, and each of them, either singularly or jointly acted and/or agreed to deliberately and/or recklessly present false statements and information, and/or omitted known exculpatory material information when creating their various documents for presentation to the Juvenile Court, as alleged herein

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

42

above. This conduct, i.e., Defendants' knowingly deceptive presentation of "evidence" to the Juvenile Court, interfered with and/or severed Q.A. and Y.A.'S

147. Had it not been for Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and/or DOES 1 through 20's reckless and/or deliberate false statements and/or omissions of exculpatory material in the Removal Warrant Application, the Juvenile Court, LUIS and ROSA would not have been deprived of their association and/or relationship with QA and YA.

148. Had it not been Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and/or DOES 1 through 20's reckless and/or deliberate false statements and/or omissions of exculpatory material in the Juvenile Dependency Petitions, Detention Report, Jurisdiction/Disposition Report, Ex Parte Application, Status Review Report, and/or other reports filed in the Juvenile Court, the Juvenile Court would not have adopted Defendants' recommended findings, and LUIS and ROSA would not have been deprived of their association and/or relationship with QA and YA.

149. As a direct and proximate result of these Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA and/or DOES 1 through 20's misconduct, Q.A. and Y.A. have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to,

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

43

physical manifestations of emotional distress, and/or mental anxiety and anguish, among other things.

150. Due to the malicious, wrongful, and despicable nature of the Defendants ARZATE, OKELOLA, LOPEZ, BARRALES, DISON, SOLIS, OCHOA, and/or DOES 1 through 20's misconduct, as herein alleged and described above, Manuel and Andres are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

## THIRD CLAIM FOR RELIEF
### *MONELL* RELATED CLAIMS FOR FAILURE TO PROTECT FROM HARM/STATE CREATED DANGER
### (By All Plaintiffs against COUNTY)

151. Plaintiffs incorporate by reference all the preceding paragraphs as if the same were fully set forth herein.

152. COLA including through its entity, DCFS, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. (*Monell v. Dept. of Social Services* (1978) 436 U.S. 658.)

153. COLA, including through its entity DCFS, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including those under the First and Fourteenth Amendments, to include without

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

44

limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; and the right to procedural due process.

154.  COLA defendants also had a duty to use reasonable care to supervise and train their contractors, agents, officers, employees, and all acting under them, to protect these constitutional rights and to discipline or reprimand them if they fail to observe parents and children's constitutional rights. It is Defendant COLA's obligation under the law to take these steps so that their actors refrain from acting with deliberate indifference to the constitutional rights of Plaintiff to avoid causing the injuries and damages alleged herein. Based on the duties charged to COLA, including the nature of its work relating to child abuse investigations, COLA knew or should have known of the obvious need to establish customs, policies, and practices required to protect the civil rights of parents and their children.

155.  COLA established and/or followed policies, procedures, customs, and/or practices which were instead violative of familys' constitutional rights of familial association, which policies, procedures, customs, and/or practices were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the Fourth and Fourteenth Amendments, by, but not limited to: The policy, custom, or practice of separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances;

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

45

a.    The policy, custom, or practice of separating children from their parent, without a court order, if the parent does not sign a Safety Plan that he or she does not agree with;

b.    The policy, custom, or practice of continuing the detention of children from their parents after learning of the absence of exigent circumstances, and without obtaining parental consent or a court order;

c.    The policy, custom, or practice of regularly and systematically performing non-consensual, unwarranted invasive forensic medical examinations upon children;

d.    The policy, custom, or practice of not notifying a parent of a desire or intent to perform an invasive forensic medical examination and/or any medical examination;

e.    The policy, custom, or practice of excluding a parent from the examination room during the aforesaid forensic medical examination;

f.    The policy, custom, or practice of barring a parent from access to their child's medical records even though the parent retains medical rights, and going further than barring such access themselves, but advising affiliates, partners, contractors, and other persons and facilities that perform such procedures and are required by law to maintain such examination documentation and information, to deny producing same to the parent; by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the investigation of child abuse.

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

46

This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiff may seek leave to amend this pleading as more information becomes available.

156.  COLA breached its duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs, and practices; by failing to employees who violate the aforementioned Constitutional safeguards; and by deliberately permitting its agents to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected parents, including Plaintiff herein.

157.  COLA knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its policies, practices, customs, and usages would cause Plaintiff to be injured and damaged by COLA's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training.

158.  These actions, and/or inactions, of COLA are the moving force behind, and the direct and proximate cause of Plaintiffs' injuries, as alleged herein. As a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiff has incurred, and will continue to

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

47

incur, attorney's fees, costs, and expenses, including those as authorized by 42

U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

159.  Plaintiffs request damages as described in paragraphs 204 through 208,

for the conduct of Defendants complained of in this Claim for Relief.

## **JURY TRIAL DEMAND**

160. Plaintiffs demand a jury trial on each Claim for Relief set forth above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of

action, as follows:

1. General damages according to proof at trial on each cause of action for which such damages are available;

2. Special damages according to proof at trial on each cause of action for which such damages are available;

3. Compensatory damages according to proof at trial on each cause of action for which such damages are available;

4. Punitive damages according to proof at trial on each cause of action for which such damages are available;

5.  Attorney's fees pursuant to 42 U.S.C. § 1988, and any other applicable statute;

6. Costs of suit incurred herein; and

7. Such further relief as the Court deems just and proper.

**Dated:       February 3, 2023**

_Rachel R Raymond_
_____
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES
AGUILERA ET AL., V. COUNTY OF LOS ANGELES, ET AL.
U.S. DISTRICT COURT – CENTRAL DISTRICT
CASE NO: 2:23-CV-00875

48