Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@PBBGBS.COM
Sherry M. Gregorio, Esq., Bar No.: 263856
Sgregorio@PBBGBS.COM
Vincent Contreras, Esq. Bar No.: 340132
vcontreras@PBBGBS.COM
**PETERSON BRADFORD BURKWITZ**
**GREGORIO BURKWITZ & SU, LLP**
100 North First Street, Suite 300
Burbank, California 91502,
T: 818.562.5800
F: 818.562.5810

Attorneys for Defendants,
COUNTY OF LOS ANGELES, JEANETTE ARZATE, ANTHONY OKELOLA, and ESPERANZA LOPEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ENRIQUE AGUILERA ANGELES, an individual; ROSA EMELIA CEBALLOS LOPEZ, an individual; Y.A., a minor, by and through her guardian ad litem, LUIS AGUILERA; and Q.A.., a minor, by and through her guardian ad litem, LUIS AGUILERA<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; JEANETTE ARZATE, an individual; ANTHONY OKELOLA, an individual; E. LOPEZ, an individual; ERIKA BARRALES, an individual; NORMA DISON, an individual; LISETTE SOLIS, an individual; MARICELA OCHOA, an individual; CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT (LAPD), a public entity, LAPD OFFICER RAMIREZ, Hollenbeck Division, serial number 31010; LAPD OFFICER BRAVO, Hollenbeck Division, serial number 36154; and DOES 1-20 inclusive,<br><br>Defendants. | Case No.: 2:23-cv-00875-FMO-MAR<br>Assigned to the Honorable: Fernando M. Olguin<br>[Room 6D]<br><br>**DEFENDANTS, COUNTY OF LOS ANGELES, JEANETTE ARZATE, ANTHONY OKELOLA, AND ESPERANZA LOPEZ'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>*[Concurrently filed with Statement of Uncontroverted Facts; Appendix of Evidence; and [Proposed] Order]*<br><br>Date:  March 19, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6D<br><br><br><br>Trial Date: May 19, 2026<br>Complaint Filed: February 4, 2023 |

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**TO THE HONORABLE COURT:**

PLEASE TAKE NOTICE that on March 19, 2026, at 10:00 a.m. in Courtroom 6D of First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Defendants, COUNTY OF LOS ANGELES, JEANETTE ARZATE, ANTHONY OKELOLA, and ESPERANZA LOPEZ (collectively "County Defendants"), will move this Court for an order granting Partial Summary Judgment, in their favor against Plaintiffs, LUIS ENRIQUE AGUILERA ANGELES, an individual; ROSA EMELIA CEBALLOS LOPEZ, an individual; Y.A., a minor, by and through her guardian ad litem, LUIS AGUILERA; and Q.A., a minor, by and through her guardian ad litem, LUIS AGUILERA (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure, Rule 56.

Defendants respectfully assert that they have met the requirements of Federal Rules of Civil Procedure, Rule 56, and that their Motion for Summary Judgment must be granted on the grounds that no triable issues of material fact exist on the following issues:

1. There is no triable issue of material fact as to Plaintiffs, Luis Enrique Aguilera Angeles, Rosa Emelia Ceballos Lopez, Y.A., and Q.A.'s for their Second Claim for Relief for Judicial Deception – First, Fourth, and Fourteenth Amendments under 42 U.S.C. § 1983 pled against Defendants Jeanette Arzate, Anthony Okelola, and Esperanza Lopez because there were no misrepresentation or omissions in the Statement of Cause, Detention Report, and/or Juvenile Dependency Petition.

2. There is no triable issue of material fact as to Plaintiffs, Luis Enrique Aguilera Angeles, Rosa Emelia Ceballos Lopez, Y.A., and Q.A.'s for their Third Claim for Relief for Monell under 42 U.S.C. § 1983 pled against Defendant, County of Los Angeles fails to raise a triable issue of material fact.

///

///

///

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

1    This motion is made following the conference of counsel pursuant to L.R. 7-3

2    and Dkt. # 29.  The conference took place on both December 8, 2025, and January

3    13, 2026, and the parties did not reach a resolution.  As such Defendants bring this

4    motion to preserve its right.

5

6    DATED:  February 6, 2026

            **PETERSON BRADFORD BURKWITZ**
            **GREGORIO BURKWITZ & SU**

7

8

9    By:    */s Vincent Contreras*

10    Avi Burkwitz, Esq.

11    Sherry M. Gregorio, Esq.
    Vincent Contreras, Esq.

12    Attorneys for Defendants, COUNTY
    OF LOS ANGELES, JEANETTE

13    ARZATE, ANTHONY OKELOLA,
    and ESPERANZA LOPEZ

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PETERSON BRADFORD BURKWITZ**
**GREGORIO BURKWITZ & SU, LLP**
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

3

# **TABLE OF CONTENTS**

I.    COUNTY DEFENDANTS' INTRODUCTION ................................................. 9

II.   PLAINTIFFS' INTRODUCTION .................................................................. 10

III.  COUNTY DEFENDANTS' STATEMENT OF FACTS ............................... 11

IV.   PLAINTIFFS' STATEMENT OF FACTS .................................................... 16

V.    LEGAL STANDARD .................................................................................. 18

VI.   THERE IS NO TRIABLE ISSUE OF MATERIAL FACT AS TO
      PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR JUDICIAL
      DECEPTION IN VIOLATION OF THE 1ST, 4TH, AND 14TH
      AMENDMENTS AGAINST ARZATE, OKELOLA, AND LOPEZ ............ 19

      A.    ARZATE DID NOT ENGAGE IN ANY MISREPRESENTATION
            BECAUSE EVERYTHING CONTAINED IN HER WARRANT
            PACKAGE WAS TRUE ...................................................................... 20

      B.    PARTIAL SUMMARY JUDGMENT IS APPROPRIATE FOR
            OKELOLA ........................................................................................ 21

      C.    CSW LOPEZ DID NOT ENGAGE IN ANY JUDICIAL DECEPTION
            AS THE IDC WORKER ...................................................................... 22

VII.  PLAINTIFFS' PORTION ............................................................................ 23

      A.    DEFENDANT AZARTE SUBMITTED FALSE STATEMENTS TO
            THE COURT WHICH WERE MATERIAL TO THE COURT'S
            DECISION TO ORDER THE REMOVAL Y.A. AND Q.A. .............. 23

      B.    PLAINTIFFS WAIVE ALL ARGUMENT WITH RESPECT TO

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

4

DEFENDANTS ARGUMENT AT SECTION VI B. .........................30

C.    JUVENILE DEPENDENCY PETITION SUBMITTED TO COURT
      BY LOPEZ ALSO  CONTAINS MATERIAL LIES AND
      OMISSIONS ................................................................................30

VIII.  THERE IS NO TRIABLE ISSUE OF MATERIAL FACT AS TO
       PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR MONELL AGAINST
       THE COUNTY OF LOS ANGELES...............................................37

IX.    PLAINTIFF'S PORTION .................................................................39

X.     CONCLUSION ...............................................................................39

XI.    PLAINTIFFS' CONCLUSION........................................................39

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*

     477 U.S. 242, 248 (1986)……………………………………..…19, 30

*City of Canton v. Harris*,

     489 U.S. 378, 385 (1989) ………………………………………...37

*City of Los Angeles v. Heller*,

     475 U.S. 796, 799 (1986) ………………………………………...38

*Cynthia D. v. Superior Court,*

     5 Cal.4th 252, 248 (1993) ………………………………………....36

*Edgerly v. City & County of San Francisco,*

     599 F.3d 946, 961 (9th Cir. 2010) ……………………………..21

*Ewing v. City of Stockton,*

     588 F.3d 1218, 1224 (9th Cir. 2009) …………………………...19, 27

*Green v. Camreta,*

     588, F.3d 1011, 1035 (9th Cir. 2009) …………………………...19, 27

*Hardwick v. Cnty. of Orange,*

     844 F.3d 1112 (9th Cir. 2017) ………………………………....28, 33

*In re N.M.,*

     197 Cal. App. 4th 159, 166 (2011) …………………………...22, 31, 35, 36

*Jackson v. Barnes,*

     749 F.3d 755, 763, 692 (9th Cir. 2014) …………………………...37

*Jones v. County of Los Angeles,*

     722 Fed Appx. 634, 636 (9th Cir. 2018) ………………………….19

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

*Jones v. Williams,*

    297 F.3d 930, 934 (9th Cir. 2002) ……………………………………….21, 22

*Liston v. County of Riverside*,

    120 F.3d 965, 973 (9th Cir. 1997) ……………………………………….25, 33

*Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.,*

    237 F.3d 1101, 1107-09 (9th Cir. 2001) …………………………………...19

*Miller v. Nestande*,

    192 Cal.App.3d 191 (1987) …………………………………………...30

*Monell v. Dep't of Soc. Servs. of City of New York*,

    436 U.S. 658…………………………………………………………..37, 38

*Palmerin v. City of Riverside*

    794 F.2d 1409, 1414 (9th Cir. 1986) …………………………………...38

*Pembaur v. City of Cincinnati*,

    475 U.S. 469, 480 (1986) …………………………………………...38

*Peterson v. California*,

    604 F.3d 1166, 1171 (9th Cir. 2010) ……………………………….22, 31, 35

*Sardarbekians v. Cnty. of Los Angeles*,

    No. CV 19-00864 ODW (KS), 2023 WL 5488519,

    *21-22 (C.D. Cal. 2023)…………………………………………..34, 37

*Scanlon v. County of Los Angeles,*

    92 F.4th 781, 799 (9th Cir. 2024) ……………………………..19, 21, 22, 27, 28

*Spokeo, Inc. v. Robins*,

    578 U.S. 330, 330, 339 (2016) ……………………………………….39

*Trevino v. Gates*,

    99 F.3d 911, 918 (9th Cir. 1996) ……………………………………….37

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

*Villegas v. Gilroy Garlic Festival Ass'n*,

    541 F.3d 950, 957 (9th Cir. 2008) ……………………………………..37

*Wallis v. Spencer*,

    202 F.3d 1126, fn.10 (9th Cir. 2000) ………………………………….29

*West v. Atkins,*

    487 U.S. 42, 48, (1988) …………………………………………………..39

*Whitman v. Superior Court*,

    54 Cal.3d 1063 (1991) …………………………………………………35

**Statutes and Other Authorities**

42 U.S.C. § 1983……………………………………………………………...37

California Penal Code § 11165.7(a)(17) …………………………………...12

California Penal Code § 11166(a) …………………………………....…..12

F.R.C.P. 56(a) ……………………………………………………..…18, 30

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    COUNTY DEFENDANTS' INTRODUCTION

A parent's most paramount duty is to ensure the safety and well-being of their child, while putting their own desires, and wants second.  Yet, there are cases where parents put themselves first, neglect their child's needs, betray their child's trust and expose them to dangers.  When those parents fail their jobs, that job falls squarely on the social workers to act quickly and protect those children.  Here the undisputed evidence in this case is exactly that, emergency response social worker Jeanette Arzate (hereinafter "Arzate") took Plaintiffs, Y.A. and Q.A.'s concern serious, detained them and removed them from their parents' custody.  The safety concerns presented to Arzate as reported by Plaintiffs, Y.A. and Q.A. were that their parents failed to protect them, they no longer wanted to live with their parents because of a sexual predator[1], and Y.A.'s mental state was depressive due to living a mere few hundred feet of her sexual abuser, to which she resorted to self-harm and had suicidal ideations.  This was all unraveled through a detailed investigation by Arzate, who interviewed Y.A., Q.A., their sister Itzel Aguilera ("Itzel"), and the Plaintiffs' parents, Luis Enrique Aguilera Angeles ("Aguilera Angeles"), and Rose Emelia Ceballos Lopez ("Lopez").  Based on the investigation, Arzate moved forward with a warrant to remove Y.A. and Q.A., and that warrant was granted by the dependency court.

Despite Arzate following everything to the tee, ensuring the safety of Y.A. and Q.A., Plaintiffs all now claim that the social worker defendants wrongfully removed Y.A. and Q.A. from their home based on fraudulent facts and/or omissions contained in the warrant package (statement of cause and detention report) submitted by Arzate.  Regardless of Plaintiffs' contentions, the undisputed evidence is that none of the Plaintiffs can identify where a single material fact that was

---

[1] Plaintiff Y.A. and her two older sisters Itzel Aguilera and Xochitl Aguilera were sexually abused by their neighbor Javier Hernandez.

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

allegedly misrepresented, and/or omitted from Arzate's statement of cause or detention report. Moreover, Plaintiffs, Y.A. and Q.A. unequivocally testified that everything they reported to Arzate was true, which Arzate used in her warrant package. As such, everything in Arzate's warrant packages was true and there is no shred of evidence that Plaintiffs can point to where Arzate misrepresented, and/or omitted a material fact.

For the foregoing reasons, Defendants respectfully request that this Court grant partial summary judgment in their favor, or in the alternative, partial summary judgment against Plaintiff.

## II.    PLAINTIFFS' INTRODUCTION

With their motion, Defendants provide numerous facts and evidence which are immaterial to the most important question regarding Plaintiffs' claims: lies and omissions made to the juvenile court in order to secure a warrant to remove Y.A. and Q.A. and to keep them detained from their parents.

Defendants strain themselves to paint a picture that Luis and Rosa were unprotective parents and were neglectful of sexual abuse being committed against their daughters. Regardless of however Luis and Rosa reacted to the revelation that three of their four daughters were abused by who they believed was a trusted family friend, the primary issue which resolves Plaintiffs' Fourth and Fourteenth Amendment claims is whether or not the social worker defendants lied to the juvenile court in order to secure a warrant and detain the children. Defendants completely fail to show a lack of dispute as to these most important facts. Below, Plaintiffs will demonstrate numerous facts to show material lies and omissions which the juvenile court relied upon in order to sign a warrant to remove Y.A. and Q.A., and in order to detain them following the February 10, 2021 Detention Hearing.

Plaintiffs are waiving any and all argument with respect to Defendants' arguments made in sections VI B, and VIII, with respect to Defendant Okelola's and

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1  the County of Los Angeles' liability.

2      The evidence Defendants rely upon is largely immaterial, irrelevant, and

3  presented in a compound to "very" compound fashion. Defendants fail to establish a

4  lack of dispute as to multiple material facts, and therefore, Defendants Azarte and

5  Lopez are not entitled to judgment as a matter of law.

6  ### III.    COUNTY DEFENDANTS' STATEMENT OF FACTS

7      The Aguilera-Angeles family has four daughters, Itzel Aguilera, Xochitl

8  Aguilera, Y.A., and Q.A. (UMF 1.) In or around January of 2021, Itzel (24-years),

9  Xochitl (21-years old), and Y.A. (16-years old) were enjoying dinner and talking,

10 but the conversation shifted to their neighbor Javier Hernandez (Hernandez). (UMF

11 2.) Once the conversation shifted to Hernandez, Y.A., Itzel, and Xochitl discovered

12 that all three of them, at different times in their lives, were all sexually abused by

13 Hernandez. (UMF 3.) All of them had different recollections and unpleasant

14 experiences, but there were two similarities between the Aguilera daughters. One,

15 that they were sexually abused by Hernandez when each of them were between the

16 ages of six to eight, and two, *they had told their mother* (Lopez) of the sexual abuse

17 when it happened. (UMF 4.) Shockingly, Lopez did nothing each time when her

18 daughters disclosed the abuse, and even more alarming, convinced each daughter it

19 did not happen and that it was a dream. (UMF 5.)

20     After this discussion took place, each daughter began relieving the trauma

21 after many years of suppressing it and decided to disclose it to their parents

22 (Angeles-Aguilera and Lopez). This was in the hope that their parents would offer

23 their support and guidance to tackle a very delicate situation. (UMF 6.) However,

24 when the Aguilera daughters confronted their parents, the parents were not

25 supportive, indifferent to their needs, and attempted to persuade them not to report

26 the abuse to law enforcement. (UMF 7.) The Aguilera daughters were distraught,

27 disappointed, and upset about their parents' reaction. (UMF 8.)

28     Based on the Plaintiffs' parents' indifference, Y.A. left their home and stayed

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

1    with a friend for weeks.  Whereas, Itzel and Xochitl also left the home, but Q.A.

2    stayed.  (UMF 9.)

3         After a few weeks, and prior to January 27, 2021, Y.A. came to the decision

4    she would report her abuse, as well as her sister's abuse to a school counselor.  This

5    decision was supported by Y.A.'s sisters (Q.A., Xochitl, and Itzel).  (UMF 10.)

6    Whereas the parents had no idea this decision was made and had yet to report the

7    abuse themselves to law enforcement.  (UMF 11.) Y.A. was also fully aware by

8    reporting this to her school counselor, this would have a domino effect that either

9    Department of Children Family Services (DCFS) and/or Los Angeles Police

10   Department (LAPD) would intervene because of the school counselor's mandated

11   reporting requirements[2].  (UMF 12.) Y.A. reported the abuse to her school counselor

12   on January 27, 2021.  (UMF 13.)  Ultimately, this report was referred to LAPD for

13   further investigation.  (UMF 14.)  Once this report was made to LAPD, Y.A. came

14   to learn that her parents switched tunes and claimed they were now supportive of her

15   decision to report the abuse.  (UMF 15.)

16        Subsequently, on February 3, 2021, the Aguilera-Angeles family went to

17   Hollenbeck Police Station as part of the investigation.  (UMF 16.) Each of the

18   Aguilera-Angeles family were interviewed by LAPD officers and detectives. Itzel,

19   Xochitl, and Y.A. all disclosed the sexual abuse they endured at the hands of

20   Hernandez.  Additionally, Itzel reported to officers that her parents and Hernandez

21   "were good friends" and have known each other for a very long time.  (UMF 17.)

22   Itzel also reported the incident to her mother Plaintiff Lopez when it occurred, but

23   Lopez did not take any action.  (UMF 18.) Xochitl reported that father Aguilera-

24   Angeles acted "crazy" when they disclosed the abuse to him.  Moreover, that

25   Aguilera-Angeles questioned why they decided to "bring this up."  Xochitl felt that

26

27   [2] Pursuant to California Penal Code § 11166(a), mandated reporters must immediately report known or reasonably suspected instances of child abuse or neglect.  Counselors are identified as mandated reporters.  *See* California Penal Code § 11165.7(a)(17).

28

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

their father was blaming them for bringing up the sexual abuse by Hernandez. Meanwhile, Y.A. provided that her father did not want her or her sisters to file a police report because it was going to be too much drama, no one would believe them, and that he was afraid that his clients would find out.  (UMF 18-21.) Y.A. also reported that Plaintiff Lopez was aware of the abuse and did nothing about it.  (UMF 22.) Q.A. denied ever experiencing sexual abuse by Hernandez.  (UMF 23.) Lopez was interviewed and confirmed she did nothing with respect to her own daughters when they told her of the abuse.  (UMF 24.)

After LAPD completed their interviews of the Aguilera-Angeles family, LAPD requested an expedited response from DCFS.  (UMF 25.) On February 3, 2021, Arzate an Emergency Response ("ER") social worker[3] with over thirteen years of experience investigating allegations of child abuse and neglect responded to Hollenbeck Station at approximately 9:40 p.m.[4] (UMF 26.)

Arzate immediately began her investigation and conducted independent interviews of the Aguilera-Angeles family.  (UMF 27.)  Arzate interviewed Y.A. first and Y.A.'s interview was consistent with what she represented to LAPD officers/detectives.  Specifically, the abuse she endured, mother's failure to report the abuse, and both parents' indifference to supporting her or her sisters to report the abuse.  (UMF 28.)  However, Y.A. further expressed symptoms of depression and suicidal ideations, which began only a few weeks prior[5].  (UMF 29.) Y.A. also expressed that Hernandez still had access to their home and was afraid of him.  Even years after the abuse occurred.  (UMF 30.) Y.A. also felt her parents could not do much to help or protect her from Hernandez.  (UMF 31.)[6]  Y.A. confirmed

---

[3] ER social workers respond only after the Child Protection Hotline deems the matter worthy enough to send a social worker out in the field.  To warrant sending an ER social worker, the allegations reported to the Child Protection Hotline must be such that the immediate health and safety of the child is at stake.

[4] At approximately 8:21 p.m., LAPD Officer Ramirez consulted with Arzate regarding the allegations, interviews and safety for Y.A. and Q.A.

[5] Y.A. resorted to cutting herself to escape the situation.

[6] Prior to reporting the abuse to LAPD, Y.A. was staying with a friend for two weeks and subsequently with her

13

1    everything she told Arzate was true and there were no inaccuracies. (UMF 32.)

2    Moreover, Y.A. never wanted to return back home. (Id.)

3        Arzate then interviewed Q.A. and similar to Y.A., her interview was

4    consistent with what she represented to LAPD. Q.A. confirmed she was never

5    abused by Hernandez, but further expressed that her father was an alcoholic, and

6    resorted to alcohol when he needed to cope. (UMF 33.) Moreover, when the

7    parents consume alcohol, they would be supervised by their sisters. Q.A. was very

8    critical of her parents, in that they failed to protect her sisters, and she felt that the

9    mother was protecting the abuser Hernandez due to their families being close.

10   (UMF 34.) Q.A. also expressed that father was indifferent to her sister's needs

11   because he blamed the sisters for coming out with the abuse. The parents had no

12   plans to report the abuse to law enforcement. Ultimately, Q.A. was not hopeful or

13   certain her parents could protect her sisters because the parents still communicate

14   with Hernandez. (UMF 35.) Q.A. confirmed everything she told Arzate was true

15   and expressed she would go wherever Y.A. went. (UMF 36.)

16       Arzate interviewed Father Aguilera-Angeles, and he confirmed he was

17   unaware of his daughters' abuse until it was brought to his attention in January of

18   2021. (UMF 37.) Aguilera-Angeles was receptive to Arzate's concerns and

19   requested services and support from DCFS to further support his children. Further,

20   Aguilera-Angeles was open to doing whatever was recommended by Arzate/DCFS.

21   (UMF 38.) Notably, Aguilera-Angeles could not point anywhere in Arzate's reports

22   (statement of cause and/or detention report), where she fabricated facts,

23   misrepresented facts and/or omitted facts. (UMF 39.)

24       Arzate then interviewed Mother Lopez, and she acknowledged that she did

25   nothing each time her daughters disclosed the abuse to her when it occurred. (UMF

26   40.) Lopez also noted that Aguilera-Angeles was not receptive when his daughters

27   disclosed the abuse to him, as he screamed at Itzel. (UMF 41.)

28

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

sisters at a hotel.

14

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

After Arzate completed her interview with Lopez, Arzate consulted with her supervisor Anthony Okelola ("Okelola") regarding her investigation of the Aguilera-Angeles family. Essentially, Arzate reported that (1) Y.A. did not feel her parents had the protective capacity to ensure her and Q.A.'s safety from Hernandez; (2) parents failed to report the incidents to law enforcement; (3) parents failure to validate the children's concerns, has resulted in Y.A. experiencing suicidal ideation and self harm; and (5) mother's failure to report the abuse over an eighteen year span has resulted in the sexual abuse of three of her children, despite being disclosed of the abuse. (UMF 42.) Based on the reports, both Arzate and Okelola agreed that there was a substantial risk to Y.A. and Q.A. if they remained in the care of the parents. (UMF 43.) At this time, Okelola recommended Arzate to follow up with the family for a Safety Plan[7]. (UMF 44.)

As such, Arzate followed up with the family regarding a safety plan, which would ensure that Y.A. and Q.A. *have no contact with Hernandez*. (UMF 45.) In order to ensure that there would be no contact, Arzate suggested Y.A. and Q.A. stay with their grandmother Yolanda Angeles. (UMF 46.) Lopez was supportive of this decision; however, Aguilera-Angeles was initially not on board. Arzate did not push the issue and left it for Aguilera-Angeles to decide. (UMF 47.) Ultimately, Aguilera-Angeles agreed with the Safety Plan and had Y.A. and Q.A. stay with his mother (Yolanda Angeles) to minimize any possible triggers. (UMF 48.)

Y.A. and Q.A. were then placed with their grandmother pursuant to the Safety Plan. (UMF 49.) On February 5, 2021, Arzate filed a warrant containing the statement of cause, and the court reviewed and executed the warrant to detain both Y.A. and Q.A. This was done because the safety plan was only valid for seven days. (UMF 50.)

---

[7] A Safety Plan will be explored for a family after a Safety Assessment has been completed. A Safety Assessment is: (1) to help assess whether any child is likely to be in immediate danger of serious harm/maltreatment (which requires a protective intervention) and (2) to determine what interventions should be initiated or maintained to provide appropriate protection. (*See* Exhibit, 59 – DCFS Policies)

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

Intake and Detention Control social worker Esperanza Lopez's ("CSW Lopez") only role in this case was to facilitate the filing of documents in the dependency court. (UMF 51.) CSW Lopez's sole role in this matter was to take the paperwork submitted by Arzate, consult with County Counsel and prepare a petition to be filed with the dependency court that forms the basis of a legal type of operative complaint that alleges and avers certain types of allegations against the parents. (UMF 52.) In this instance CSW Lopez took the information from Arzate's detention report and prepared the petition seeking detention from the parents under Welfare and Institutions Code Section 300. (UMF 53.) CSW Lopez did not interview anybody, nor did she participate in the decision to seek removal of Y.A. and Q.A. as that is not within her purview. (UMF 54.) Moreover, when CSW Lopez signs off penalty of perjury on her petition she is only affirming that the information she obtained is from the Detention Report. Not affirming the facts itself are true. (UMF 55.)

On February 11, 2021, a detention hearing was conducted before the dependency court, and it was ordered that Y.A. and Q.A. continued to be detained from parents. (UMF 56.) Y.A. and Q.A. remained with their paternal grandmother and noted they did not want to return back home. (UMF 57). On June 28, 2021, the dependency court terminated jurisdiction due to the parents entering a voluntary family maintenance plan[8]. (UMF 58.) At that point Q.A. was the only child to return back home, whereas Y.A. did not. (UMF 59.) On January 22, 2022, DCFS and the family's VFM ended.

## IV.   PLAINTIFFS' STATEMENT OF FACTS

On February 5, 2021, Defendant Jeanette Arzate submitted a warrant package seeking the removal of Y.A. and Q.A. from their parents' custody. D 50, Def. Ex.

---

[8] A Voluntary Family Maintenance ("VFM") is time-limited protective services (DCFS supervision) to families whose children are in potential danger of abuse, neglect or exploitation when the children can safely remain in the home and the family is willing to accept services and engage in corrective action. VFM is a voluntary agreement entered by the parents between the Court and/or DCFS and is limited to six months.

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

34. In the Statement of Cause submitted with the warrant application, Defendant Arzate stated there were DCFS concerns with Luis and Rosa and "their ongoing failure to protect the children from sexual abuse of an adult neighbor, which has been occurring for many years." Pltfs Ex. B, p. 13. When Arzate wrote this, she understood that the sexual abuse *had not been* "occurring for many years," and instead, she understood that the then 16-year-old Y.A. disclosed being abused by the neighbor on one occasion no sooner than eight (8) years prior. P 75, Pltfs. Ex. A, p. 8. Then 13-year-old Q.A. reported that she had never been abused by the neighbor. Pltfs. Ex. A, p. 2.

Arzate also wrote in the Statement of Cause that the "parents were dismissive of the disclosures of sexual abuse of these children and the adult sibling." Pltfs Ex. B, p. 13. Crucially, as stated above, only one child had actually disclosed sexual abuse (Y.A.) – not "these children." P 74, Pltfs. Ex. B, p. 14. Further, the evidence clearly shows that Luis had only just learned about the abuse (P 76, Pltfs. Ex. A, p. 2), and Rosa told Y.A. to tell her school counselor about what happened to her. P 67, Pltfs. Ex. A, p. 2. Pltfs. Ex. B, p. 16. Azarte knew from the family's referral history that a previous referral stemming from Y.A.'s disclosure to the school counselor was *evaluated out – meaning no one even went out to investigate the claim*, and that the counselor reported to DCFS that parents Luis and Rosa planned to report Y.A.'s abuse to law enforcement. P 72, P 73, Pltfs. Ex. B, p. 14.

During his interactions with Defendant Azarte at the Hollenbeck police station, Luis demonstrated significant protective capacity toward his daughters. While at the station with the family, Azarte learned Luis stated to Defendant Bravo that he wanted to strangle his daughters' abuser. P 69, Pltfs. Ex. B, p. 16. Azarte also learned that Luis had taken his daughters to the Hollenbeck station prior to February 3 in order to report the abuse. P 70, Pltfs. Ex. E, 102:11-103:16. Luis told Azarte that his daughters had not been in contact with their abuser for a "long time, before COVID" (P 71, Pltfs. Ex. A, p. 24), and Rosa told Azarte that – prior to their

17

1    interviews at the Hollenbeck station – that the family had already come up with a

2    plan to keep a parent with the girls and keep them away from the abusive neighbor.

3    P 77, Pltfs. Ex. A, p. 27.

4        Azarte knew that Luis would support any decision Y.A. wanted to make with

5    regard to reporting the crime that had been committed against her. P 80, Pltfs. Ex. A,

6    p. 6. Luis was fully cooperative with Azarte and was willing to do whatever DCFS

7    recommended to protect his daughters. P 78, Pltfs. Ex. A, pp. 24-25.

8        Following the removal of Y.A. and Q.A. via warrant, Defendant Lopez was

9    tasked with using Azarte's Detention Report to draft a Juvenile Dependency Petition

10   to submit to the juvenile court judge in order to further detain the girls. P 66, Pltfs.

11   Ex. C, 33:19-34:22, 35:24-36:11.

12       In her petition submitted to the juvenile court before the February 10, 2021

13   Detention Hearing, Lopez wrote "the mother continued to allow the [girls' abuser]

14   to frequent the child's home and to have unlimited access to the child." Pltfs. Ex. D,

15   p. 4. She also wrote that Luis attempted to stop Y.A. from reporting the abuse to law

16   enforcement. P 84, Pltfs. Ex. D, p. 6. Lopez also omitted from her petition the

17   following factual material: she omitted the ages of Y.A. and Q.A.'s adult siblings;

18   she omitted the fact that Rosa told Y.A. to speak to a school counselor about her

19   abuse; she omitted any and all facts related to Luis as a protective and cooperative

20   parent; and she omitted the fact the parents had already agreed to keep the girls at

21   their grandmother's house and away from the perpetrator. P 85, P 86, P 87, P 88,

22   Pltfs. Ex. D.[9]

23              **V.    LEGAL STANDARD**

24       Summary judgment is proper "if the movant shows that there is no genuine

25   dispute as to any material fact and the movant is entitled to judgment as a matter of

26   law." F.R.C.P. 56(a). A party may move for summary judgment on part of a claim.

27

28   [9] The significance of these omissions and the things left in that were twisted from what was in, or "not said" in the Detention Report, is explained more fully in the section about Defendant. Lopez's liability below.

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

1  Id. "Only disputes over facts that might affect the outcome of the suit under the

2  governing law will properly preclude the entry of summary judgment." (*Anderson v.*

3  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## VI. THERE IS NO TRIABLE ISSUE OF MATERIAL FACT AS TO PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR JUDICIAL DECEPTION IN VIOLATION OF THE 1ST, 4TH, AND 14TH AMENDMENTS AGAINST ARZATE, OKELOLA, AND LOPEZ

8  A child's interest in being free from unlawful removal from the custody of her

9  parents is protected by the Fourth Amendment right to be free from unreasonable

10  searches and seizures. *Jones v. County of Los Angeles* (9th Cir. 2018) 722 Fed

11  Appx. 634, 636. A parent's interest in familial association is protected by the First

12  and Fourteenth Amendments. *Id.* A violation of these rights occurs when the child

13  is removed without a warrant, parental consent, or evidence that the child is in

14  "imminent danger of serious bodily injury." *Id*; *See also Mabe v. San Bernardino*

15  *Cty., Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1107-09 (9th Cir. 2001).

16  However, if the detention is by warrant, as in this case, Plaintiffs must show

17  (1) a misrepresentation or omission (2) made deliberately or with a reckless

18  disregard for the truth, that was (3) material to the judicial decision." *Scanlon v.*

19  *County of Los Angeles,* 92 F.4th 781, 799 (9th Cir. 2024). Misrepresentation or

20  omission are "material if the Juvenile Court would have declined to issue the order

21  had the social worker been truthful." *Green v. Camreta* 588, F.3d 1011, 1035

22  (9th Cir. 2009). Additionally, materiality is a question for the court to determine.

23  *Ewing v. City of Stockton* 588 F.3d 1218, 1224 (9th Cir. 2009). In this case,

24  Plaintiffs contend that Arzate the ER social worker, her supervisor Okelola, and IDC

25  CSW Lopez engaged in judicial deception in the warrant process in order to detain

26  both Y.A. and Q.A.

27  ///

28  ///

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

**A.**    **Arzate Did Not Engage In Any Misrepresentation Because Everything Contained In Her Warrant Package Was True**

Here, the alleged false statements and/or omitted facts included:

1) When Arzate inquired with the LAPD officer on whether they feel comfortable releasing the children to the parents and the officer stated "It will be only because they are now on notice and I think the dad is being protective of the kids now that he knows. I think the mom will be able to protect because we are involved, but I think the dad is more protective";

2) Y.A. reported that "she feels safe at home, is eating every time she is hungry, always has clean clothes, and attends the doctor when is ill."

3) Y.A. also reported that her father stated "I shouldn't have acted the way I acted. I was just in shock, 'he said that he will do whatever I wanted to do to make me feel safe. He said if I need more time separated, I can take as much time as I want he will be there whatever next step I can take, he will take it with me;

4) Y.A. stated that she thinks her father did call police to make an appointment to speak to the police;

5) Y.A. reported that she feels safe with mother and father;

6) Q.A. never reported she did not feel safe at home;

7) The last abuse was approximately eight years ago;

(SAC ¶ 100-104, 113.)

However, Plaintiffs' alleged false statements and/or omission of material facts are belied by the fact that all these facts were both included in Arzate's statement of cause and detention report. (*See* Ex. 34 & Ex. 36.) Arzate's reports went above and beyond and included details that addressed both the concerns by the then Plaintiff children, their sisters, as well as favorable facts to the parents and to the children. (*Id.*) Further, as evident in the Plaintiffs' family's deposition, not one member could point to any particular document or statement made by Arzate that was materially

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

20

1   false.  (UMF 32, 36, 39, 40[10].)  There must be a materially false statement made

2   and/or omission.  *Scanlon, supra* 92 F.4th at 799.  Here, Plaintiffs could not point to

3   a ***single statement or omission*** allegedly made by Arzate because none existed.

4   Further, Plaintiffs, Y.A. and Q.A. unequivocally testified that everything they told

5   Arzate was true, they wanted their separation from their parents and had genuine

6   concerns about whether they could be protected.  (UMF 28-36, 57, 59.)  This dooms

7   Plaintiffs' second claim for relief.  As such this claim should be dismissed against

8   Arzate.

9          **B.    Partial Summary Judgment Is Appropriate For Okelola**

10          An individual defendant cannot be held liable for the alleged misconduct of

11  another defendant.  *See Jones v. Williams* 297 F.3d 930, 934 (9th Cir. 2002).  Any

12  claim that Okelola merely approved of the warrant, without bringing forth instances

13  of his personal involvement beyond that, is insufficient to bring a claim against him

14  under the law. *See Edgerly v. City & County of San Francisco* 599 F.3d 946, 961 (9th

15  Cir. 2010).

16          Here, Okelola, as Arzate's supervisor merely relied on the information that

17  Arzate presented to him regarding her investigation involving the Aguilera-Angeles

18  family. (UMF 42.)  Based on the information that Arzate presented to Okelola, they

19  both agreed that the best course of action for the Aguilera-Angeles would be to

20  explore a safety plan to ensure Y.A. and Q.A. would have no contact with

21  Hernandez. (UMF 43-46.)    Okelola does not perform the investigations, nor does

22  he draft the statement of cause, the application for removal or the declaration of

23  removal. (UMF 50.)  Okelola merely supervised Arzate, who relayed her findings

24  from her investigation involving the Aguilera-Angeles family and agreed that there

25  should be a safety plan to minimize any triggers for Y.A. and Q.A.  Okelola also

26  does not sign warrants or approve them before they are filed by the emergency

27  response social workers.  (Ex. 34.)

28

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

---

[10] Itzel could not identify any materially false statement or omission contained in any of Arzate's reports.  (*See* Ex. 55)

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1  Based on Okelola's lack of involvement in the investigation or preparation of

2  any of the documents provided to the court in seeking the warrant, no liability would

3  rest with her due to her actions, and she cannot be held liable for the alleged actions

4  of another. *See Jones*, *supra*, 297 F.3d at 934.  Accordingly, summary judgment is

5  warranted for Okelola.

6  **C.   CSW Lopez Did Not Engage In Any Judicial Deception as the IDC**

7  **Worker**

8  Plaintiffs allege CSW Lopez, the IDC worker, engaged in judicial deception.

9  Yet, CSW Lopez did not prepare the warrant package, submit a statement of cause,

10  prepare the detention report, or participate in the investigation despite the allegation

11  in the complaint (*See* SAC ¶ 122 & 124.)  There is no evidence that CSW Lopez

12  investigated or corroborated the factual allegations of abuse or that she intentionally

13  misrepresented facts to the dependency court.  On the contrary, the evidence is

14  undisputed that CSW Lopez's role was limited to filing a juvenile petition with the

15  court. (UMF 51-54.)

16  Further, as for the petition and Plaintiff claiming there was judicial deception

17  by CSW Lopez, it is permissible for her to have relied upon information provided by

18  other social workers, even if the information is based on matters beyond her personal

19  knowledge.  (UMF 55.); *See Peterson v. California* 604 F.3d 1166, 1171 (9th Cir.

20  2010).  Therefore, to the extent the statements that were submitted to the dependency

21  court were learned through Arzate's investigation, no liability that can attach to CSW

22  Lopez.  *See* Id.  Further, no facts were alleged to show a level of reckless disregard

23  for the truth necessary to state a claim of judicial deception against CSW Lopez.

24  *Scanlon, supra* 92 F.4th at 799.

25  Additionally, juvenile court petitions are not material to the detention of a child.

26  *See In re N.M.* (2011) 197 Cal. App. 4th 159, 166 ("[I]f the jurisdictional findings are

27  supported by substantial evidence, the adequacy of the petition is irrelevant.").  Here,

28  the Dependency Court clearly had sufficient information, as the children were

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

1  detained.  As noted above, materiality is required in order to satisfy this claim, and

2  since the dependency court did not rely on the petition and relied on the statement of

3  cause and information from the investigating social workers to detain both minors,

4  there can be no liability against CSW Lopez, and summary judgment is appropriate

5  for her.

**VII.   PLAINTIFFS' PORTION**

6

7  **A.   Defendant Azarte Submitted False Statements To The Court**

8  **Which Were Material To The Court's Decision To Order The**

9  **Removal Y.A. and Q.A.**

10  Defendants' reliance on the fact that Defendant Azarte included *some*

11  exculpatory information in her Statement of Cause seeking an order to remove Y.A.

12  and Q.A. is misplaced. Defendants conveniently ignore instances where Azarte

13  made representations in her Statement of Cause which were completely belied by

14  facts known to her, egregious representations, leading to absolute nuclear explosion

15  level portrayals of a false reality so powerful as to change the body chemistry of the

16  reader.  This was accomplished by her claiming something that when reduced to a

17  headline, reads like this, "Parents Allow Minor Daughters To Be Sexually Abused

18  By Next Door Neighbor For Years."  It takes no leap of genius to see how that

19  "poisons the well," which in this case the "well" is the mind of the Court asked to

20  rule on the issue *of removing children* from their parents in an ex-parte setting (as

21  are all known warrant applications).

22  This kind of aspersion, and everything about improper sexual conduct with a

23  child colors to the farthest reaches of negative, if not violence on the reaction

24  spectrum.  Then, anything and everything else that follows in terms of a using

25  sexual abuse of a child evokes an immediate stigma and negative bias against the

26  alleged sexual abuser, immediately upon hearing or reading about it.[11]  *See*, *Stigma*

27

28  _____

[11] It should not require citation, as common sense will do; A label like *pedophile, much less parent who allows a parent to sexually abuse their child* activates moral stigma and stereotypes that shape subsequent perception of the individual (negative attributions of character/morality.

23

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

*and Health/Risk Communication*, Rachel A. Smith, Xun Zhu, and Madisen Quesnell – Oxford Research Encyclopedias, June 2016; *Understanding and Challenging Stigma Associated With Sexual Interest in Children: A Systematic Review,* Amy L Lawrence, Gwenda M Willis, International Journal of Sex Health, January 2018.

Crucially, and stated on the very first page of her oath-sworn statements Azarte falsely claimed that Luis and Rosa failed to protect Y.A. and Q.A. "from sexual abuse of an adult neighbor, *which has been occurring for many years*." Pltfs. Ex. B, p. 13.

It is undisputed that when Azarte wrote this, she knew that 1) Q.A. was never sexually abused by the neighbor, and 2) no sexual abuse against Y.A. (and least of all Q.A.) had ever been "*ongoing*," and in fact was a singular event which disclosed and described herself of being abused in <u>one instance</u> by the neighbor roughly eight years prior to Azarte's investigation.[12] P 75, Pltfs. Ex. A, p. 8. The fact that Azarte's Statement of Cause contained the information that Y.A.'s abuse occurred eight years ago does not negate the fact that Azarte included the above misrepresentation about "ongoing" abuse at the inception of her lengthy twenty-eight (28) page narrative. Pltfs. Ex. B.

Another lie – also on the first page of the Statement of Cause under "Summary of Concerns" – is made regarding the parents' alleged dismissiveness towards their daughters' disclosures of abuse. So "out the gate" so to speak, Azarte has said this in so many words, "the parents allowed their daughters to be sexually abused for years and they simply don't care."

Azarte wrote this misrepresentation despite knowing that 1) Luis, the father, had only learned two weeks prior to 2/3/24 that *any of his daughters had been abused by Javier Hernandez*, 2) Luis told Azarte *repeatedly* that he was willing to do whatever was recommended by DCFS to help address safety concerns, and 3)

---

[12] The Defendants cite no evidence – because there is none – that a single of their four daughters were molested/assaulted more than one single time, and all were 7-8 years ago.

Rosa suggested and encouraged Y.A.'s decision to tell a school counselor about the abuse, and 4) Luis took his family to the police station at an earlier date to support them while they reported the abuse to authorities, and were turned away due COVID restrictions. P 67, P 70, P 76, P 78.

In that same Summary of Concerns, Azarte stated that Y.A. had been cutting herself for "about one year." This is despite the fact that Y.A. told her she had recently cut herself, yet Azarte herself noted in other documentation (DSL's) she saw no cuts on Y.A.'s hands. P 79, Pltfs. Ex. A, p. 7.

"[A] Fourth amendment violation occurs where 'the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.'" *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). Under the law, those seeking a warrant are required to report "the total story," because failure to do so can allow an affiant to manipulate the inferences a judge will make about the facts and the existence of probable cause. *Id*. It is this "manipulat[ion] of the inferences]" that was the goal, and it is abundantly clear that it was the goal.

By leading her Statement of Cause with a "summary" that characterizes both minors as being the victims of "ongoing" sexual abuse with "dismissive" parents who fail to supervise them, throwing in – based on who but Azarte knows what - *while they drink alcohol*, Arzate intentionally failed to accurately summarize the "total story," and put a roadblock in the reader's mind that could not have been overcome thereafter, and would in fact constitute a prism through which all "light" was bent towards the false, the grotesque, the maddening.

The total story includes these false facts that were *known to Azarte to be false*, including the fact there was no "ongoing" sexual abuse taking place. P 75, Pltfs. Ex. A, p. 8. Azarte also knew the father had only recently found out that any of his daughters had been abused. P 76, Pltfs. Ex. A, p. 2. She also knew that _after_ Luis had an initial negative emotional reaction to his daughters' disclosures, surely a

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

disclosure that is itself a small nuclear device exploding in the head of a man who thought his neighbor was a friend of his family and his daughters all healthy and happy, a man who he trusted, that he told them he would support whatever they wanted to do (P 80, Pltfs. Ex. A, p. 6), drove his daughters to the police station multiple times (P 76, Pltfs. Ex. A, p. 2) pursuing their intervention if not assistance, and told Azarte that he would cooperate with DCFS and keep his daughters close to him and away from their abuser. P 78, Pltfs. Ex. A, pp. 24-25. Further, Rosa had told Azarte at the Hollenbeck station the family "already made a plan that [their daughters] were not going to stay at home alone, they cannot go to [the perpetrator's] house at all, and I will be with them at all times all day." P 77, Pltfs. Ex. A, p. 27.

Luis demonstrated his protective capacity for his daughters repeatedly to Azarte through his words and actions at the police station, and as clear as could be that capacity was of a loving, protective, and practical father; yet none of that, zero of that, can in any way be gleaned from Azarte's "summary" of the concerns as to whether the girls were at risk of being sexually abused again by the neighbor. More facts in this vein include: 1) Azarte heard that night (2/3/24) from Officer Ramirez that Luis stated he wanted to strangle the perpetrator (P 69, Pltfs. Ex. B, p 16); 2) Luis repeatedly and consistently told Azarte he was willing to cooperate with DCFS and do "whatever [he] needs to do" to protect his children. P 78, Pltfs. Ex. A, pp. 24-25.

This note was taken of discussion with Luis, "CSW asked what his plan is now that the children have disclosed this abuse: I want to help Yaretzi. I need to make sure she is well. Secondary, I want him (Mr. Hernandez) to pay for what he has done-- to pay with the law because each of my girls were 7-8 years old when he did this to them, and I don't know if he is continuing to abuse children that age. (CSW asked what he will do to protect his children). Whatever I need to do." *Id*.

Defendants rely on the fact that many exculpatory facts are included by

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

Azarte in her Statement of Cause. However, having "poisoned the well," they were meaningless, and so very, very material – albeit false – and the Statement of Cause clearly paints the picture Azarte sought to portray of the parents with regard to this issue of near lifetime abuse of the girls by the neighbor; the effort was sadly and unlawfully successful.

Plaintiffs will now turn to *Scanlon v. County of Los Angeles*, 92 F.4th 781 (9th Cir. 2024), which while cited by Defendants for its general legal rules in this area of judicial deception in the context of child welfare investigations and proceedings, is cited by Plaintiffs because it manifestly supports their position this warrant was obtained using unlawful judicial deceit, and at the very least triable issues of material fact are imbued in the facts and record regarding removing these children from their parents, and the fact one big lie, is enough to constitute judicial deception.

In this case, if the lie about abuse *ongoing for years* and allowed (and treated dismissively) by "the _parents_," and the claim the parents attempted to "convince" the children not to make a police report, and "the _parents_" having failed to "immediately" contacted the police, or any combination thereof were all not lied about, not omitted about, not portrayed in a false light, then there is every reason to deny the Defendant's request as the juvenile Court may well have "declined to issue the [removal] order had the social worker been truthful." *Green v. Camreta* 588, F.3d 1011, 1035 (9th Cir. 2009)

It is agreed from *Scanlon* that Plaintiffs must show (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." Id. 799 It is also agreed, "misrepresentations or omission are "material if the Juvenile Court would have declined to issue the order had the social worker been truthful." *Green v. Camreta* 588, F.3d 1011, 1035 (9th Cir. 2009). Yes, materiality is a question for the court to determine. *Ewing v. City of Stockto*n 588 F.3d 1218, 1224 (9th Cir. 2009).

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

One citation that the Defendants leave out of this area of jurisprudence, however, essentially an "omnibus ruling" containing "omnibus language" in the context of judicial deception used to separate children from parents in child welfare proceedings, comes from the case of *Hardwick v. Cnty. of Orange*, 844 F.3d 1112 (9th Cir. 2017)  This is a significant explication of the law from *Hardwick*, and frames the appropriate attention to be given to, and treatment by any Court when determining claims of judicial deception in the conduct of social workers removing children by way of warrants in the child welfare industry;

> In Fourth Amendment excessive force cases, often the disputed force used turns out under examination not to have been excessive. In Eighth Amendment cruel and unusual punishment cases, the same is true. A punishment imposed may not be either cruel or unusual. *But there is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible. Why? Because government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts. Furthermore, the social workers' alleged transgressions were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance. There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent.*"
> Id. 1119 – emphasis

In *Scanlon*, it is also noted – and cannot be disputed – that the law is clear on several points, which as applied in this matter are stated as follows; 1) even if Y.A. was the victim of several incidents of abuse by the neighbor,[13] the fact that for one child there was a probable cause level basis for her removal does not make the seizure *of the other child* with zero history of abuse by every count any less the victim of an unreasonable seizure under the Fourth Amendment[14] Id. 798, and, 2) the same is true of the identical treatment of the parents in Azarte's Statement of

---

[13] This, and much to follow in this list are in the venerable vein of "arguendo" because the set-ups are false, and that should be understood throughout review of this list.

[14] In *Scanlon* a young autistic daughter was using a marijuana based treatment; the other nothing at all.  Both were taken by the same deceptively false Statement of Cause.

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1   Cause when there was not even a hint of a glimmer of a fact that supported any

2   claim they were similarly situated in the false claim of "allowing" any sexual abuse

3   of their children, much less "ongoing abuse" going on for "years," that is not

4   allowed under the Constitution; the father Luis did not know a thing about any of it

5   until just two weeks prior to being at the Hollenbeck Station (*See*, *Wallis v. Spencer*,

6   202 F.3d 1126, fn.10 (9th Cir. 2000)).

7    Yet Azarte lumps them together falsely – despite knowing otherwise – as

8   previously stated, and *again one more time* just before signing her SOC under oath,

9   saying, "In addition, mother and father failed to immediately report the abuse to law

10   enforcement, and attempted to convince the children not report this abuse to proper

11   authorities."  Azarte's Statement of Cause is literally "bookended" with lies and

12   omissions caste in a light of children with a predator being invited in the home and

13   suffering years of sexual abuse at the hands of their parents.

14    In *Scanlon*, the virtual entirety of the Ninth Circuit's ruling turned on one

15   false statement, and that one false statement was a sufficiently important material

16   falsity, to the effect of "the mother and father are treating child, minor [K.X.'s]

17   autism with cannabis oil and *have not consulted with a medical professional* or a

18   professional who deals with autism, [and that] endangers the physical and emotion

19   well-being of the child such that the children are at risk of suffering emotional or

20   physical harm." Id. 799 – emphasis in original

21    Were it true they had not done so, that would raise eyebrows and blood

22   pressure in many a reasonable jurist, yet, it unquestionably pales in comparison,

23   does not even warrant space in the same ponderance with, false claims of "parents"

24   allowing their young 7-8 year old daughters to repeatedly sexually abused over a

25   period of years, being "dismissive" of this repeated sexual abuse over a period of

26   years.

27    As stated in Plaintiffs' Introduction, Defendants provide a multitude of

28   irrelevant and immaterial facts and a great deal of those immaterial facts are not

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

1  supported by the evidence Defendants are offering.

2      Defendants also present this evidence in the Statement of Uncontroverted

3  facts in a severely multi-compound fashion; with multiple facts stacked into one

4  "fact." Defendants' fact D 42 is a good example of this. Defendants also heavily rely

5  on Defendant Arzate's warrant documents (Defs. Ex. 34), including the Statement of

6  Cause, while almost never citing to a specific page in that 42 page document.

7      Plaintiffs have provided the Court with evidence herein which creates at

8  minimum a genuine issues of triable material facts with respect to whether

9  Defendant Azarte misled the warrant-issuing court with the content of her warrant

10  package and Statement of Cause in a manner that without such deception the Court

11  would likely not have issued the warrant. Defendant Azarte is not entitled to

12  judgment as a matter of law.

> **B.**    **Plaintiffs Waive All Argument With Respect To Defendants**
> **Argument At Section VI B.**

> **C.**    **Juvenile Dependency Petition Submitted To Court By Lopez Also**
> **Contains Material Lies and Omissions**

17      Defendant Lopez's request for partial summary judgment falls far below the

18  initial requirements of a moving party in a motion for summary judgment (or partial

19  summary judgment).  A party seeking summary judgment bears the initial burden to

20  support their motions with admissible evidence showing there is no triable issue of

21  material fact.  F.R.C.P. 56(a).  Only once that showing has been made is the

22  opposing party required to submit competent rebuttal evidence from which the court

23  can infer these material facts are genuinely disputed. *Anderson v. Liberty Lobby,*

24  *Inc.*, 477 U.S. 242, 243 (1986); *Miller v. Nestande*, 192 Cal.App.3d 191 (1987)

25      Defendants do not even attempt to make a showing.  The first "effort" made is

26  to state things Plaintiffs allege of Lopez' role are not true (eg. not involved in the

27  Statement of Cause, investigation, or Detention Report).  That is right, but it is of no

28  relevance to the claim of her deception in the Petition, the W&IC 300 Petition that

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

30

brings the case to Court and establishes the temporary jurisdiction over the children by the Court in the juvenile dependency matter.[15]

The problem is two-fold as to Defendant Lopez's approach to this argument.

First, Defendant Lopez tries to build to an argument that essentially reads, "it's ok if a social worker fills out a Petition from other material rather than personal investigation, and signs it under oath." For that proposition the Defendant appears to use the *Peterson* case, *infra*, for support. Plaintiffs deal with that case and its non-relevance to that proposition below.

Third, Defendants argue that lies and omissions in the separate sworn document known as the Petition, are fine, there's "nothing to see here," because in another document, signed under "Respectfully Submitted" but not under oath, some additional information is found. That is incongruent, not explained as to what relevance perjury in a sworn document has as to perjury, or non-perjury, or additional information in another document. The document contains what the prosecuting agency is intending to pursue in terms of claims. To essentially say it is without value or irrelevant is simply specious and dismissive.

Moving to other arguments made by Defendant Lopez there is this one,

> "Additionally, juvenile court petitions are not material to the detention of a child. *See* <u>In re N.M.</u> (2011) 197 Cal. App. 4th 159, 166 ("[I]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant."). Here, the Dependency Court clearly had sufficient information, as the children were detained. As noted above, materiality is required in order to satisfy this claim, and since the dependency court did not rely on the petition and relied on the statement

---

[15] The effort by Defendant Lopez to make a point that it is "undisputed" her "role was limited to filing [the Petition]," which is undisputed, except to the extent she prepared the Petition (which is undisputed – she prepared and signed it. SAC). That point appears to be attempting to lay a nest for an absolute immunity argument, maybe later, that she can't be sued merely for filing a Petition. As to that – if that is the point – that is true, and she is not being sued for "filing" the Petition. Defendant Lopez is being sued for preparing a Petition with false statements in it and with a clearly deliberate effort to exclude exculpatory information in a sworn document introduced to start a dependency matter in Court; it is textbook judicial deception.

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

of cause and information from the investigating social workers to detain both minors, there can be no liability against CSW Lopez and summary judgment is appropriate for her."

It is instantly apparent that there is not a single citation to legal authority, a declaration, or a statute for any of the propositions stated in that paragraph; not one.

So what did Defendant Lopez do exactly? She committed judicial deception.

Defendant Lopez wrote in the Juvenile Dependency Petition submitted to the juvenile court that "the mother continued to allow the [girls' abuser] to frequent the child's home and to have unlimited access to the child." P 82, Pltfs. Ex. D, p. 4. Not feeling that sufficient, apparently, wanting to color the circumstances more darkly, Lopez further writes Rosa also gave the perpetrator "*unlimited access*" to the children after Xochitl disclosed her abuse to her years ago. P 83, *Id*., p. 5. Lopez falsely stated in her petition that Luis attempted to stop Y.A. from reporting the abuse to law enforcement. P 84, *Id*., p. 6. However, none of these statements are true.

Defendant Lopez testified she was trained by the County to "repeat – read detention reports and come up with the allegations for petitions." P 65, Pltfs. Ex. C, 33:19-34:22. There are zero statements or representations made in Azarte's Detention Report, her warrant package or Statement of Cause, which could lead any reasonable person to even infer that Rosa provided the perpetrator "unlimited access" to her daughters. Defs. Ex. 36. There are also zero statements in the Detention Report to imply that Luis tried to prevent his daughters from disclosing their abuse to anyone. *Id*. That a father, literally punched in the heart hearing about this abuse to his now adult, and one minor child, by a neighbor who at least considered friendly if not a friend, is instead painted by DCFS design, as a villain.

Defendant Lopez's omissions are much more severe and/or involve nuanced wordplay; some of which include the omission of the confusion as to exactly how aware Rosa *actually was* that her daughters were previously abused. P 68, Pltfs. Ex. A, pp. 1-2, 26. Lopez also *omitted the ages of the adult sibling, which renders it*

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

*impossible to know by reading the petition how recently any sexual abuse occurred*. P 85, Pltfs. Ex. D. Most significant, Defendant Lopez completely omitted any and all references from the Detention Report which showed any protective capacity on the part of the parents toward their daughters (P 87, *Id.*); this conduct evidence's deliberate action, not negligence, not mistake, nor scrivener's error. She did not include any mention of how it was Rosa who told Y.A. to report her abuse to the school counselor (P 86, *Id.*), no mention of how Azarte was advised by City Defendant Ramirez (LAPD investigating at Hollenbeck Station on 2/3/24) that he believed after interviewing Luis that he was protective, (P 81, Pltfs. Ex. A, p. 3) that Luis wanted to physically harm the perpetrator (P 69, Pltfs. Ex. B, p. 16), no mention of or how cooperative he was (P 80, Pltfs. Ex. A, p. 6) or of the parents' agreement to let the girls stay with a relative away from the perpetrator's home (P 88, Pltfs. Ex. D).[16]

Defendant Lopez's juvenile dependency petition is the prime example of what the *Liston* court referred to as failure to report the "total story." *See Liston*, 120 F.3d at 973. It is a prime example of violating the dictates of *Hardwick*, *supra*, wherein the Ninth Circuit said,

> *"[T]here is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible,"* and, *"Why[,] [b]ecause government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts. Furthermore, the social workers' alleged transgressions were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance. There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent."* Id. 1119 – emphasis

---

[16] In an abundance of caution Plaintiffs footnote this last part about "'parents' agreement to let the girls stay with a relative," because that was a "spin" put on the events, circumstances, and conversations occurring at the Hollenbeck Station late in the evening of 2/3/24 (and into the next day), but to be shown should the matter go to trial, Luis was aware of an "ultimatum" that if "consent" was not "given," the children would have been taken then and there.

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

Defendant Lopez did not simply copy, verbatim, language from Defendant Azarte's Detention Report to add to the petition; *she provided her own language*, an act which connotes if not evidences "intent," deliberate intent. This language was aimed at misleading the warrant-issuing judge into an improper inference that Luis and Rosa knew about years-worth of sexual abuse being perpetrated against their daughters by a neighbor, *allowed the perpetrator access to the children*, and tried to hinder them from reporting their abuser.

In *Sardarbekians v. Cnty. of Los Angeles*, No. CV 19-00864 ODW (KS), 2023 WL 5488519, *21-22 (C.D. Cal. 2023), the District Court denied summary judgment for two defendants on a judicial deception claim. Similar to this case and like Defendant Lopez, one of the defendants in *Sardarbekians* was an L.A. County DCFS social worker who worked in the Intake Detention and Control Unit ("IDC"). *Id*. Like Lopez, the *Sardarbekians* defendant was tasked with taking social workers' detention reports and other supporting documents to draft "counts" for a juvenile dependency petition. *Id*.; P 65, Pltfs. Ex. C, 33:19-34:22.

When the plaintiff in *Sardarbekians* claimed the petition contained deliberately fabricated information – despite the petition writer basing his work on materials prepared by other social workers – the court denied defendants' motion, reasoning: "Even though Defendant Hsieh's IDC Petition was a compilation of materials prepared by Cornell and others, to the extent Plaintiff maintains that the Petition and its allegations deliberately fabricated information concerning Plaintiff, the resolution of that issue ultimately is a credibility determination, which precludes a grant of summary judgment in Defendant Hsieh's favor as to qualified immunity." *Sardarbekians*, 2023 WL 5488519 at *21.  Curating the information presented in the Petition the way Lopez did, was clearly part of the over-all gang tackle of the "truth" in the County's treatment of the Plaintiffs, the filing of the warrant followed by the Petition, essentially the dragging of the family into the juvenile dependency court system.

34

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

Defendant Lopez hopes to rely on the fact that she drafted her petition based on the materials of other social workers in the field. To that end they argue,

"Further, as for the petition and Plaintiff claiming there was judicial deception by CSW Lopez, it is permissible for her to have relied upon information provided by other social workers, even if the information is based on matters beyond her personal knowledge. (UMF 55.); See Peterson v. California 604 F.3d 1166, 1171 (9th Cir. 2010).

Defendant's citation to *Peterson* as justification for asserting things under penalty of perjury that are not true, and omitting in curated fashion exculpatory facts undermining the very things being alleged/asserted under penalty of perjury, is to a most distinguishable case, one that frankly has zero bearing on the issues, and less bearing in support of an argument that seeks to persuade this Court lying in a sworn document filed for the purpose of securing custody of children is legally and Constitutionally acceptable.

*Peterson* was a criminal matter, wherein a criminal defendant (Peterson) was arguing a relatively new statute (Cal. P.C. 115) deprived him of his Sixth Amendment right to confront the witnesses against him at a preliminary hearing, because it allowed for the use of hearsay; he was suing the State of California for the bill that allowed that violation of the hearsay rule. The eleven page ruling is essentially "over" by the third page, as the Court determines there is no constitutional right involved in a preliminary hearing. The Peterson Court notes, citing *Whitman v. Superior Court*, (1991) 54 Cal.3d 1063, "[T]he preliminary hearing itself is not constitutionally mandated." In conclusion, it then finds Proposition 115 did not violate the Due Process Clause of the Fourteenth Amendment.

Defendants' citation to *In re: N.M.* is hard to justify. It is apparently a thinly dressed argument that this case means if jurisdiction is sustained in juvenile court, then a Petition is meaningless, or "immaterial," hoping the "immaterial" is a dog whistle of sorts to a virtue determination for the argument lying under oath in one is

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

35

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1   not judicial deception and therefore doing so is not material[?]. Assuming, as best

2   can be assumed, that is the argument it quite contrived and misleading. If that is the

3   argument, it is also missing one other thing important thing if is trying ; there is no

4   evidence that the juvenile court made a "jurisdiction finding." There will be an

5   attempt to unravel the mystery of it's citation, but first, the facts of N.M. were not

6   shared by Defendants, so Plaintiffs will share them.

7        First, it is a juvenile dependency case; though that much may have been

8   obvious it bore pointing out in this federal civil rights litigation.

9        Second, the issue of a father's physical abuse of his child was at issue in the

10  juvenile case, and he entered into a negotiated plea and settled the matter; there

11  could be no more disparate a fact pattern than that with the juvenile matter that the

12  County drug this family into. There was no jurisdiction finding in the Aguilera

13  dependency matter, but that would be Defendants' burden to show and they have

14  not, and cannot because it did not happen. As important, a Detention Hearing is

15  governed by W&IC §319, and that only requires a "prima facie" holding to maintain

16  custody of children who are already detained, as they were in this case by the

17  fraudulent warrant of Azarte and the fraudulent Petition from Lopez.

18       In N.M., after negotiating the settlement Kevin then appealed the sufficiency

19  of the evidence to support the jurisdictional finding for the first time on appeal; the

20  Court concluded, "seems like he is trying to have the best of both worlds." Clearly

21  he was trying.

22       Plaintiffs appreciate the citation to the case, because it contains a citation to a

23  maxim of juvenile dependency law that is correct.  The N.M. Court, citing W&IC

24  355 and Cynthia D. v. Superior Court (1993) 5 Cal.4th 252, 248, states: "We note

25  that in dependency proceedings, the child welfare agency must prove by a

26  preponderance of the evidence that the child who is the subject of the petition comes

27  under the court's jurisdiction." *In re N.M.*, 197 C.A.4th 159, 168 (2011). The State

28  appellate court opinion in *In re: N.M.* is of no moment to the current dispute.

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

Plaintiffs in this case have offered substantial evidence to show that Lopez added fabricated and exaggerated information into her petition, making it even more palatable and unquestioned by convenient omissions, regardless of the basis of where she got most of her information to draft the petition. This creates a credibility determination suitable for a jury just as it did in *Sardarbekians*, and Defendant Lopez's request for partial summary judgment must be denied.

## VIII.  <u>THERE IS NO TRIABLE ISSUE OF MATERIAL FACT AS TO PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR MONELL AGAINST THE COUNTY OF LOS ANGELES</u>

To prevail on a § 1983 *Monell* claim, Plaintiff must show (1) that she suffered a constitutional violation, and (2) that a municipal policy caused the violation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658.  Under *Monell*, a local government body can be held liable under §1983 for policies of inaction as well as policies of action. A policy of action is one in which the government body itself violates someone's constitutional rights or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.' *Jackson v. Barnes* (9th Cir. 2014) 749 F.3d 755, 763, 692.  A county is liable only if there is "a direct causal link" between its policies or customs and the alleged constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Further, liability for improper custom, or practice "may not be predicated on isolated or sporadic incidents," but must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Moreover, a plaintiff must show that the official who violated their constitutional rights acted under a policy set by the municipality's "properly constituted legislative body" or by "officials whose acts or edicts may fairly be said

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1  to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480

2  (1986) (internal quotations omitted).  However, absent a showing of a constitutional

3  injury at the hands of a state actor, the fact that the departmental regulations might

4  have authorized the use of the constitutional violation is insufficient to establish

5  municipal liability.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

6        Putting aside liability against the social workers, there is no basis for Monell

7  because Plaintiffs fail to show a direct causal link between its policies or customs

8  and the alleged violation.  Plaintiffs allege the County has a custom, policy, or

9  practice for detaining children from their parents after learning of the absence of

10  exigent circumstances and without waiving obtaining parental consent or a court

11  order.  (*See* SAC ¶ 168(a).)  Plaintiffs also broadly claims there is a practice and/or

12  custom by the County that its social workers misstate facts material for

13  determination of removal.  (*See* SAC ¶ 168(b).)  Plaintiffs allege that there is a

14  policy, practice, and custom separating drafters of juvenile dependency petitions

15  from the ER social workers who actually conduct the initial investigations.  (*Id* at ¶

16  168(d).)

17        However, the County has extensive policy relating to detaining children

18  without a court order, which could be done either by consent and/or exigent

19  circumstances.  (UMF 61.)  Further, the County has policies and practices in place

20  regarding integrity and honesty in submitting a warrant package to the dependency

21  juvenile court.  (UMF 62.)  As such Plaintiffs are unable to point to a policy

22  "officially adopted and promulgated" that caused any supposed constitutional

23  violation. *Palmerin v. City of Riverside* (9th Cir. 1986) 794 F.2d 1409, 1414.  Nor

24  can they show any affirmative link between the policy and the particular

25  constitutional violation.

26        Moreover, Plaintiffs cannot simply point to findings of constitutional

27  violations in a host of different cases and claim that their rights must have been

28

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

violated as well.  (*See* SAC ¶ 168(b).)  Rather, it is Plaintiffs' burden to allege specific facts to show how their rights were violated in this case.  (*See West v. Atkins* 487 U.S. 42, 48, (1988); see also *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330, 339 (2016) (explaining that to establish injury in fact necessary to confer standing, the alleged injury "must affect the Plaintiff in a personal and individual way").  For the reasons discussed above, Plaintiff will not meet that burden and summary judgment is appropriate.

## IX.    <u>PLAINTIFF'S PORTION</u>

### <u>Plaintiffs Waive All Argument With Respect To Defendants Argument At Section VIII.</u>

## X.    <u>CONCLUSION</u>

Defendants, County of Los Angeles, Jeanette Arzate, Anthony Okelola, and Esperanza Lopez respectfully request the Court to grant partial summary judgment.

## XI.    <u>PLAINTIFFS' CONCLUSION</u>

Plaintiffs submit that they have shown more than sufficient amounts of deception by Defendants Azarte and Lopez by way of literally false statements – even under oath, and the usual favored route of omitting material facts in submissions to the juvenile dependency Court, such that this Court must conclude that they have carried their burden of showing that there was deception put on the Court by Defendants Azarte and Lopez, and a substantial showing that the fraudulently presented facts were either the result of intentional conduct, or occurred as the byproduct of reckless disregard for the truth.

Plaintiffs submit that of the remaining issues contested in this summary judgment proceeding, Plaintiffs should prevail and judgment for the Defendants other than those subject to a dismissal as noted hereinabove, should be denied.

///

///

///

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

1

2

DATED:  February 6, 2026

**PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU**

3

4

5

6

7

8

9

By
:

<u>/s Vincent Contreras</u>

Avi Burkwitz, Esq.
Sherry M. Gregorio, Esq.
Vincent Contreras, Esq.
Attorneys for Defendants, COUNTY
OF LOS ANGELES, JEANETTE
ARZATE, ANTHONY OKELOLA,
and ESPERANZA LOPEZ

10

11

DATED:  February 6, 2026

**POWELL & ASSOCIATES**

12

13

14

15

<u>/s Robert R. Powell</u>
ROBERT R. POWELL
Attorney for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

**PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP**
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 100 North First Street, Suite 300, Burbank, California 91502.

On February 6, 2026, I served the foregoing document described as:
**DEFENDANTS, COUNTY OF LOS ANGELES, JEANETTE ARZATE, ANTHONY OKELOLA, AND ESPERANZA LOPEZ'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

### SEE ATTACHED MAILING LIST

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules

☐ **BY MAIL:**  I deposited such envelope in the mail at Burbank, California. The envelope was mailed with postage thereon fully prepaid.  As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY ELECTRONIC MAIL:**  Based on court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address(s) below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 6, 2026, in Burbank, California.

*/s Noel Pettway*

Noel Pettway

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

41

**COUNTY DEFENDANTS' MSJ**
2:23-cv-00875-FMO-MAR

PETERSON BRADFORD BURKWITZ
GREGORIO BURKWITZ & SU, LLP
100 North First Street, Suite 300
Burbank, California 91502
Telephone 818.562.5800

## SERVICE LIST

RE:    **Angeles, Luis E. Aguilera v. County of Los Angeles**

      **Case No.:**    2:23-cv-00875-FMO-MAR

Rachel R. Raymond, Esq.
rachelrraymond@gmail.com
The Parental Rights Defense Firm
1151 El Centro St.
Suite D
S. Pasadena, CA 91030
T: 818-395-4750
F: 626-639-3140

Robert R. Powell
rpowell@rrpassociates.com
admin@rrpassociates.com
Powell & Associates
925 W. Hedding St.,
San Jose, CA 95126
T: (408) 553-0200

**Attorney for Plaintiff,
LUIS E. AGUILERA ANGELES**

Sasha Lazarevich
sasha.lazarevich@lacity.org
Assistant, Valerie Lopez
valerie.lopez@lacity.org
Los Angeles City Attorneys Office
City Hall East
200 North Main Street 6th Floor
Los Angeles, CA 90012
T: 213-978-7025
F: 213-978-8785 T: 213-978-7025
F: 213-978-8785

**Attorney for Defendant,
CITY OF LOS ANGELES,
LOS ANGELES POLICE
DEPARTMENT**

42